THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CHARLES D. LAYTON, PLAINTIFF IN ERROR.

Submitted May 17, 1940—Decided July 27, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the plaintiff in error, *Howard M. Lawn* and *Vincent J. McCue* (*Thomas P. Doremus,* of counsel).

For the state, *Edward F. Juska.*

The opinion of the court was delivered by

Parker, J. The defendant below, plaintiff in error, was convicted of embezzlement in his capacity as collector and treasurer of the borough of Deal in Monmouth county (see *N. J. S. A.* 2:124-1) and brings this writ of error. The case is submitted on briefs without oral argument. Five points are made, and will be disposed of in order.

The first is that the court overruled a challenge to the array. The challenge, allegedly in writing but not printed, was based on certain alleged "remarks" by the prosecutor in the presence of the "general panel." But as we read the state of the case, there is nothing therein which indicates that the "remarks" were made in the presence of any of the jurors who sat in the case. The remarks were made on October 31st; a new general panel came into service November 6th; and the trial began November 8th, on which day the challenge to the array was made, and the trial jury was sworn. This challenge necessarily referred to the new general panel. *Gardner* v. *State,* 55 *N. J. L.* 17, 18. We need not stop to consider the question whether any "remarks" by the prosecutor in the presence of the general panel would legally support a challenge to the array; the opinion in the Gardner case (at *p.* 18), reads: "A challenge to the array is an exception to the whole body of jurors upon the panel summoned and returned for service at the term, and is grounded upon some default of the sheriff or other officer making the return, in drawing or returning the jurors, or for partiality or misconduct in performing the duties."

The action of the court in overruling the challenge was manifestly correct.

Apart from this, we think on the authority of *State* v. *Shupe,* 86 *N. J. L.* 410, and for the reasons there stated, it was not prejudicial error to overrule the challenge.

The second point as stated in the brief, is that "the court erred in refusing to permit questions as to whether or not the defendant had been bonded." The argument is that because defendant had failed to give bond as required by statute, he was not the borough collector and hence not amenable to punishment under section 167 of the Crimes act of 1898,

now *N. J. S. A.* 2:124-1. It is not denied, and indeed the proof shows, that defendant was duly appointed borough collector, and it is not suggested that he failed to take the required oath. *Comp. Stat.* 231, § 8; *N. J. S. A.* 40:46-19. At the very least, he was collector *de facto,* and the rule seems generally settled that "criminal responsibility of officers for violation of official duties extends to *de facto,* as well as *de jure,* officers." 46 *C. J.* 1062. This rule was treated by this court as a matter of course in *State* v. *Redfield,* 9 *N. J. Mis. R.* 751 (at *p.* 755); 155 *Atl. Rep.* 757, 759; *affirmed,* 108 *N. J. L.* 552; 158 *Atl. Rep.* 544. We consider that the point is without substance.

The next point challenges the exclusion of a question to the state witness Teunon, a certified accountant, who made an audit of the borough accounts. The question was as follows: "*Q.* Mr. Teunon, do you know whether from the period February 5th, 1938, through to October 4th, 1938, all checks received as payment for taxes in the borough of Deal were duly endorsed by Mr. Layton and left lying undeposited for considerable periods of time in the borough hall?"

There were two indictments tried. One was in one count, the other contained sixteen counts. The first related to embezzlement of cash; the second to checks delivered to defendant in payment of taxes, &c. Each of the sixteen counts related to a separate check. When the question quoted above was objected to, counsel stated the following reason for allowing it: "Mr. Lawn: For the purpose of the record, the reason is that by that question we offer to prove that every one of those checks were duly endorsed and left lying there, and that because all of them were duly endorsed and lying there, of necessity the seventeen specific checks, part of that group, were left lying there, and for that reason we believe that question relevant, and that was the custom of Mr. Layton in making deposits." The point here made, as we understand it, is that the answer would have shown that (quoting the brief) "persons other than defendant had access to these seventeen [sixteen?] specified checks." The argument goes no farther, but if the intended inference is that the other persons may have purloined the checks after defendant had

endorsed them and left them lying around, we think it suf-
ficient to say that no proof of any such circumstance was
offered, and that every check (and all were in evidence)
showed the endorsement by defendant, and no other except
the stamped endorsement of the bank that cashed it, as testi-
fied by the several tellers.

The fourth and fifth points bear upon a phase of the case
which involves a claim of insanity at some time. The period
during which the sixteen checks were cashed appears to have
begun about February 5th, 1938, and to have ended about
October 4th, 1938. Naturally, if the defendant was insane
at that time, or part of it, and the character of his insanity
was such as to deprive him of the ability to distinguish
between right and wrong, the fact of such insanity would be
a defense. This, of course, is elementary law. But we do not
find in the case, nor is there pointed out in the brief, any
direct evidence whatever, to indicate insanity of the defend-
ant during that period. It does appear that on October 9th,
1939, about a month before the trial, some representation of
insanity was made to the court, which directed that the
defendant be placed at the State Hospital in Trenton for
observation and examination to determine whether or not
defendant was so insane as to be unable to co-operate with
counsel and stand trial. (We use the language of the brief.)
A jury was empaneled on October 25th and, after a trial,
returned a verdict that defendant was then sane; and accord-
ingly the trial proceeded on November 8th.

The fourth point reads as follows: "The court erred in
refusing to permit a lay witness to testify to observed facts
from which the jury could infer that the defendant was
insane."

The question asked of the witness Zauber, an accountant,
was whether when inspecting the books of the borough on
October 5th, 1939, in preparation for the defense he "observed
Mr. Layton's actions." It will be noted that this was a year
after the last alleged embezzlement, was shortly before the
defendant was sent to Trenton for observation, and about
three weeks before the jury rendered a verdict for sanity. The
question was avowedly asked for the purpose of indicating

insanity in 1938 while the checks were being cashed and the proceeds appropriated by the defendant. Manifestly, the accountant did not pretend to be an expert on insanity; and we think that the date of the examination of the books by Zauber was so remote from the dates of the various embezzlements, a year or more, that the question was properly excluded as too remote.

The fifth point relates to the testimony of a Dr. McGee who had examined the defendant at the State Hospital in October of 1939, shortly before the trial. Certain questions were asked of him by the defense counsel with a view of obtaining his expert opinion as to whether the defendant was insane a year or more before, viz., from February to October, 1938. But these questions were all predicated on the fact of the examination made by the witness at the State Hospital in 1939 in connection with certain records relating to the same period in 1939, which records were not produced or tendered, nor was there any evidence whatever of the contents of the same. Four different questions on this phase of the matter were asked and overruled, and each is the basis of an assignment of error and cause for reversal. A careful examination of these questions and the colloquy between the court and counsel at the time shows clearly, however, and indeed counsel conceded, that the opinion he desired to draw from the witness was to be predicated not only on the personal examination made by the witness, but also upon his reading of the hospital records just alluded to. Under the circumstances the exclusion of these questions was, in our judgment, clearly correct.

This seems to dispose of all the assignments and causes argued in the brief.

The judgment of conviction is affirmed.