W. J. RUSSELL, Administrator of J. M. Russell, v. WINDSOR
STEAMBOAT COMPANY.

(Decided June 9, 1900.)

*Negligence—Death of Infant—Substantial Damages—The
Code, Sections 1498, 1499, 1500.*

1. The statutory action provided by The Code, sec. 1498, against a
   party occasioning the death of another by wrongful act, neglect
   or default, may be maintained by the administrator of an
   infant, a few months old.
2. There is no distinction in the law, nor reason for distinction,
   between the death of a child and of an adult.
3. The measure of damages is the same—the difficulty is in the
   application.

CIVIL ACTION for occasioning the death of the intestate,
an infant of five months old, through alleged negligence of the
defendant in overloading its boat and causing it to sink, and
drowning its infant passenger, tried before *Coble, J.,* at
Special January Term, 1900, of the Superior Court of
WASHINGTON County. The jury found that the intestate was
killed by the negligence of defendant, and assessed the plain-
tiff's damages at $1,000. Judgment accordingly, and defend-
ant appealed.

The case on appeal is stated in the opinion.

*Messrs. Pruden & Pruden,* and *Shepherd & Shepherd,* for
appellant.

*Mr. H. S. Ward,* for appellees.

DOUGLAS, J. This is an action brought by the plaintiff as
administrator of J. M. Russell, deceased, to recover damages
for the death of his intestate, alleged to have been caused by

61——126

the negligence of the defendant. The said intestate was a child five months old at the time of his death, and was the son of the plaintiff. All the issues were found in favor of the plaintiff, his damages being assessed at $1,000. There are no exceptions other than those to the issue of damages. The following is the case on appeal:

"The Court submitted the issues set out in the record. There was evidence introduced by the plaintiff tending to show that the death of the intestate was caused by the negligence of the captain of the steamer Mayflower, running upon the defendant's line, in that he overloaded and improperly loaded the said steamboat, on account of which she turned over, as alleged in the complaint.

"Upon the fourth issue as to damages, the following was the entire evidence:

"W. J. Russell testified:

"That he was the father of the intestate. That on June 30, 1899, he took passage on the steamer Mayflower, at Plymouth, about 4 o'clock, with his wife and their two children. That one of the children, the intestate, was drowned. That the said child was a boy five months old, and had never been sick.

"R. M. Russell testified:

"That she was the mother of the child. That she was holding him in her arms when the boat turned over, and remembers nothing after that time. That the child was a boy, five months old, and had never been sick.

"The defendant introduced no testimony.

"The Court submitted the issues set out in the record to the jury, which they answered as therein stated.

"The Court charged the jury upon the question of negligence, to which no exceptions were taken.

"Upon the question of damages, the Court charged as follows:

" 'If the jury come to answer the fourth issue as to damages, then they are instructed that the measure of damage is the present value of the net pecuniary worth of the deceased, to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy. The burden is on the plaintiff to prove by a greater weight of evidence that he has sustained damage; and if the jury fail to find, under the Court's instructions, that the plaintiff has sustained any damages, then the jury will answer fourth issue, 'None.' But if the plaintiff has proved by greater weight of evidence that he has sustained damages, and in what amount, then the jury will give such sum as their answer to the fourth issue.'

"(To this charge the defendant excepted, and this is his first exception.)

"At the request of the plaintiff's counsel, the Court charged: 'If the jury come to answer the fourth issue, they shall say whether there was any life expectancy, and should estimate as best they can from their judgment and sound sense what that expectancy is, considering the age and condition of health of the deceased, then find what, in their judgment from all the circumstances, would have been the gross income; and from that gross income deduct what, in their judgment, would have been the expenditures of the intestate, for the entire period of expectancy, and the present value of the difference between that gross income and the expenditures will be the measure of damages which you should give.'

"(To this charge the defendant excepted, and this is his second exception.)

"The defendant in apt time asked the Court to charge:

" '(1) That upon all the evidence introduced, the plaintiff is not entitled to recover substantial damages against the

defendant, and the jury will. even if they answer issues two and three 'Yes,' answer the fourth issue 'Nothing.'

"(This charge the Court refused, and defendant excepted, .and this is his third exception.)

" '(2) That upon all the evidence introduced in this cause, the plaintiff is entitled to recover only nominal damages; and if the jury answer issues two and three 'Yes,' they shall .answer the fourth issue 'Five cents, and the cost.'

"(This charge the Court refused, and this is his fourth exception.)

"The jury answered the issues as shown in the record, and the Court gave the judgment as therein set forth."

Judgment was rendered for the plaintiff in accordance with the verdict.

This case as presented to us, raises the sole question whether more than nominal damages are recoverable for the negligent killing of an infant, incapable of earning anything, without direct evidence of pecuniary damage other than sex, age and condition of health of the deceased. In the very nature of things a child five months old has no present earning capacity, and has not reached a sufficient state of development to furnish any indication of his probable earning capacity in the future, other than the fact of being a healthy boy.   This is all we know of him, or ever can know.

The real question before us is involved in the defendant's second prayer, that, upon the admitted facts, the plaintiff is entitled to recover only nominal damages.   If there is no error in its refusal, there is no error in the case.   If the plaintiff can recover substantial damages, then his prayers are undoubtedly correct.   We have examined a great many authorities, but find that the large majority are based upon local statutes or predicated upon the parent's right to sue for loss of services.   In the case at bar, the father does not sue

in his own right, but bases his cause of action exclusively upon his right to recover as administrator the net value of the child's life, not what his services might have been worth to someone else during his minority, but what his entire life would have been worth to himself, had he lived. In other words, the plaintiff brought his action as he would have done had his intestate been of adult age. In the first place, we must bear in mind that our statute is not like Lord Campbell's Act, which was in fact as it was entitled "An Act for *compensating the families* of persons killed by accidents." Our statute does not regard the family relation, but gives the cause of action to the personal representative of the deceased, without distinction as to age. It is as follows: "Whenever the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured party had lived, have entitled him to an action for damages therefore, the person or corporation that would have been so liable, and his or their executors, administrators, collectors or successors shall be liable for an action for damages, to be brought within one year after such death, by the executor, administrator or collector of the decedent; and this notwithstanding the death, and although the wrongful act, neglect or default, causing the death, amount in law to a felony." Code, sec. 1498. Suppose that the child had survived, but as a cripple, condemned to a life of dependence and perhaps of pain, could he not have recovered in a suit by his next friend? If so, can not his personal representatives recover under our statute? We think he can. The position of the defendant is well illustrated by the following extract from the brief of its learned counsel: "The general rule for the measure of damages in the case of the negligent killing of an infant is laid down in *Hurst v. Detroit, etc., Ry.,* 84 Mich., 539, and is followed in about every State in which this question has been passed upon,

'In a suit by an administrator of the estate of a deceased infant (23 months old) whose *parents are entitled* to the damages recoverable under How. Stat. 8314 (similar to the North Carolina statute), for his negligent killing, the measure of such damages, if any are recoverable in such cases, is limited to his prospective earnings until of full age, which damages are special in their character, and must be specially pleaded and established by the evidence.' The following authorities more than sustain this ruling, the courts in some of the States taking cognizance of the fact that the expense of educating and maintaining the child, deducted from possible earnings until majority, would leave nothing, and hence only nominal damages, *if that,* could be recovered." Its error lies in the assumption that the plaintiff's cause of action is based upon the loss of services, which would legally cease at the majority of the deceased. The plaintiff, as father, would probably have been entitled to his common law remedy, but, in pursuing it, he would have encountered the very difficulties so clearly pointed out by the defendant and illustrated by the cases it cites. Such cases, whatever may be their decision, can not militate against our opinion in the case at bar, but may tend to sustain it, as many of them have allowed substantial damages. Admitting for the argument that the services of an infant may be worth nothing after deducting the cost of his rearing, maintenance and education, it does not follow that his services would be worth nothing to himself in his years of manhood. Education, while requiring a cash outlay more or less heavy that may not be immediately productive, is none the less a safe investment from which most handsome profits may be reasonably expected. On the other hand, if the services of an infant have any net substantial value, *a fortiori,* they would be of greater value after the completion of his education and his attainment to the strength and ability of manhood.

In cases like the present, the plaintiff is entitled under sec. 1499, of The Code, to recover "such damages as are a fair and just compensation for the pecuniary injury resulting from such death."

Sec. 1500 provides that, "The amount recovered in such action is not liable to be applied as assets in the payment of debts or legacies, but shall be disposed of as provided in this chapter for the distribution of personal property in case of intestacy." That is, it goes to the next of kin as ascertained by sec. 1478.

We see no distinction in the law, nor reason for distinction, between the death of a child and of an adult. The measure of damages is the same, but we frankly admit that the difficulty of its application is greatly increased in the case of an infant. Still, the jury must do the best they can, taking into consideration all the circumstances surrounding the life that is lost, and relying upon their common knowledge and common sense to determine the weight and effect of the evidence.

Where life is lost by reason of the actionable negligence of another, the measure of damages is the present value of the net pecuniary worth of the life of the deceased, to be ascertained by deducting the probable cost of his own living from the probable gross income derived from his own exertions, based upon his life expectancy. This expectancy is fixed by sec. 1352, of The Code, but must be considered in connection with the "other evidence as to the health, constitution and habits" of the deceased. The youngest age given therein is ten years, at which the expectancy is fixed at 43.7. This is probably a misprint for 48.7, as the expectancy at eleven years of age is fixed at 48.1, and it is hardly probable that the expectancy at eleven years would be greater than that of any succeeding age, and yet five years greater than that at ten

years of age. Moreover, it appears that the expectancy at ten years is given by the standard life insurance tables at 48.36 years, being greater than that of any subsequent age.

We do not mean to say that the *average* infant of five months has a greater expectancy of life than one of ten years, if as great, as we believe that medical statistics show a greater proportion of deaths under two years of age than at any subsequent period of life. This, not being fixed by statute, is a matter of evidence, like other circumstances of "health, constitution and habits."

We are not aware of any English case in which damages have been allowed for the death of a child of such tender years as to be incapable of earning wages, but in this country it is well settled by the weight of precedent that in such cases substantial damages may be recovered even upon a suit for loss of services. 8 Am. and Eng. Enc. of Law, 2d Ed., 919; Tiffany's Death by Wrongful Act, secs. 164, 165; Thomas on Negligence, 466; 5 Rapalge & Mack Dig. Ry. Law, sec. 403; 19 Am and Eng. R. Cases, 195, 212, and notes. In that case a judgment of $2,265 for the death of a child five years old was sustained. The following cases are cited as a few of the many examples of judgments sustained:

In *Chicago, etc., R. Co. v. Becker*, 84 Ill., 483, $2,000 were given for death of son six or seven years old; in *U. P. Ry. v. Dunden*, 37 Kan., 1, $3,000 given for boy of 11 years and 8 months; in *Strutzel v. R. Co.* (Minn.), 50 N. W. Rep., 690, $2,300 given for boy 6 years old; in *Ross v. Ry. Co.*, 44 Fed. Rep., 44, $2,500 given for boy 5 years old; in *Ewen v. Ry. Co.*, 38 Wis., 613, $2,000 given for boy eight years old; in *Hope v. Ry. Co.*, 61 Wis., 359, $1,000 given for boy 16 months old; in *Schrier v. Ry. Co.*, 65 Wis., 457, $2,000 given for boy 18 *months* old; in *Ihl v. St. Ry. Co.*, 47 N. Y., 317, 320, the Court, in sustaining a judgment for $1,800 for the

death of a boy 3 years old, says: "The absence of proof of special pecuniary damage to the next of kin resulting from the death of the child would not have justified the Court in non-suiting the plaintiff, or in directing the jury to find only nominal damages.   *   *   *   It can not be said, as matter of law, that there is no pecuniary damage in such a case, or that the expense of maintaining and educating the child would necessarily exceed any pecuniary advantage which the parents could have derived from his services had he lived. *   *   *   It has been held by this Court, in several similar cases, that the statute does not limit the recovery to the actual pecuniary loss proved on the trial."

In *Birkett v. Ice Co.*, 110 N. Y., 504, 508, the Court says: "In estimating the pecuniary value of this child to her next of kin, the jury could take into consideration all the probable or even possible benefits which might result to them from her life, modified, as in their estimation they should be, by all the chances of failure and misfortune.   They have no rule but their own good sense for their guidance, and they were not in this case bound to assume that no pecuniary benefits would come to the next of kin from this child after her majority."

There is another view of the question that forces itself upon our minds which perhaps we are not called on to consider, but, unless forced to do so by the overwhelming weight of authority or the inexorable logic of legal conclusion, we would be reluctant to admit that a human life, however lowly or feeble, had no value in the contemplation of a common carrier. Even a new-born colt or calf has an actual value entirely dependent upon its future usefulness or salability.   It is matter of common knowledge that during the days of slavery a healthy negro child, even at the breast, was considered as worth at least $100.   Let us consider the contrast.   A helpless negro baby, lying upon the floor along which he could not

RUSSELL *v.* STEAMBOAT CO.

crawl, and born to a state of hopeless bondage, was worth to the owner at least $100 as a chattel; and yet another baby, with generations of inherent qualities behind him and the magnificent possibilities of American citizenship before him, is not worth to himself, or to the country whose destinies he might one day have shaped, even the penny necessary to carry the costs. This view is entirely too incongruous to strike our fancy.

Upon the greater and better weight of authority, as well as our own convictions of natural justice and of public policy, we are constrained to hold that the plaintiff can recover substantial damages in the case at bar. In the absence of error in the trial, the judgment of the Court below is

Affirmed.

FAIRCLOTH, C. J., dissents.