ANNIE JONES HINSON, ADMINISTRATRIX OF LEONARD E. HINSON, DECEASED, v. CHARLES EDWARD DAWSON AND CHARLES A. DAWSON.

(Filed 30 March, 1955.)

**1. Pleadings § 3a: Death § 6—**

A cause of action for wrongful death, and a cause of action for personal injuries between the date of injury and the death and for property damage sustained in the collision, should be separately stated.

**2. Appeal and Error § 48—Partial new trial will be awarded when error affects only some of issues and issues are separable.**

In this action for wrongful death and for personal injuries between the date of injury and death, and for property damage sustained in the collision, error relating to contributory negligence was committed in the trial. The jury answered in the negative the issue of whether intestate was killed through the negligence of defendants, but it appeared from the

Hinson v. Dawson.

record that the answer to this issue was predicated upon a finding that intestate did not die as a result of the injuries sustained in the accident. *Held:* The error requires only a partial new trial and the verdict on the cause of action for wrongful death will stand, since it is entirely separable from the others and the error could not have affected the jury's verdict in that cause.

**3. Automobiles § 29a—**

The operation of an automobile in a business district in excess of 20 miles per hour is a criminal offense, punishable by fine or imprisonment, or both, G.S. 20-141, G.S. 20-38 (a), G.S. 20-176.

**4. Same: Statutes § 11—**

Statutes creating criminal offenses, including those relating to the operation of motor vehicles, must be strictly construed.

**5. Automobiles § 7—**

Where the violation of a criminal statute regulating the operation of motor vehicles is relied upon in a civil action as constituting negligence *per se*, the statute must be strictly construed as a criminal statute, and further, plaintiff must show that its violation was a proximate cause of the accident.

**6. Automobiles § 12d—**

Whether a motorist is traveling in a business district within the purview of G.S. 20-38 (a) is to be determined with reference to the frontage along the street or highway on which he is traveling, and conditions along intersecting streets or highways are to be excluded from consideration.

**7. Same—**

A building used for business purposes need not be in actual contact with the front property line, but fronts upon the street or highway within the purview of G.S. 20-38 (a) if the space intervening between the front of the building and the front property line and used as a means of access to the building is reasonable in extent.

**8. Same—**

A business district within the purview of G.S. 20-38 (a) is to be determined on the basis of frontage actually occupied by buildings when their side lines are projected or extended to the street or highway, without taking into consideration the open spaces between the buildings, notwithstanding such spaces may be used for business purposes or incident to the operation of a business establishment.

**9. Same—**

A district is a business district within the purview of G.S. 20-38 (a) if 75% or more of the frontage for a distance for 300 feet or more on either side of the street or highway is occupied by buildings in use for business purposes, and it is not required that the frontage on both sides of the street or highway should be so used.

**10. Automobiles § 18g (4) —**

Testimony of a witness that the automobile in question was traveling between 35 and 40 miles per hour, there being no testimony of a greater

speed, may not be considered as tending to show a speed in excess of 35 miles per hour.

**11. Automobiles §§ 12d, 18i—**

Where it is apparent from a plat introduced in evidence that the testimony of the witnesses in regard to the frontage along the highway used for business purposes included not only the buildings but the open spaces between the buildings and that the evidence, when so considered, discloses that the area was not a business district within the purview of G.S. 20-38 (a), an instruction to the effect that if defendant was driving in excess of 20 miles per hour in a business district such speed was unlawful, must be held for prejudicial error.

**12. Automobiles § 12a—**

Speed less than 20 miles per hour, either in a business district, residential district or elsewhere, if greater than is reasonable and prudent under the conditions then existing is unlawful and negligence *per se.* G.S. 20-141 (a), (c).

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Bone, J.,* August-September Term, 1954, of WAYNE.

Action by administratrix to recover damages, (1) for wrongful death of intestate, (2) for personal injuries between injury and death, (3) for damages to intestate's 1951 Ford automobile.

On 20 December, 1953, about 9:15 p.m., there was a collision between a 1951 Ford automobile, owned and operated by Leonard E. Hinson, plaintiff's intestate, hereafter called Hinson, and a 1952 Ford automobile operated by defendant Charles Edward Dawson, hereafter called Dawson, the minor son of defendant Charles A. Dawson, who owned the car and admittedly was responsible for the actionable negligence, if any, of his son when operating the car.

The collision occurred within the intersection of two paved highways in the settlement of Adamsville, about 1.2 miles east of the City of Goldsboro. U. S. Highway #70 extends in a general east-west direction between Goldsboro and Kinston. At Adamsville, it intersects, nearly at right angles, with another paved road, which, to the north of Highway #70, is U. S. Highway #102 to Snow Hill, and to the south of Highway #70 is a paved road to Johnson Air Field.

The two cars approached the intersection from opposite directions, Hinson driving west toward Goldsboro and Dawson driving east toward Kinston. The collision occurred on the north half of Highway #70, *i.e.,* on Hinson's right side as he traveled west.

Plaintiff's allegations and evidence, in brief, are to the effect that Dawson, upon reaching the intersection, made a left turn toward the north, *i.e.,* toward Snow Hill, directly across the path of the oncoming

Hinson car; and that Dawson failed to give the required signal of his intention to make such left turn, failed to keep a proper lookout, and in these and other respects was guilty of negligence proximately causing the collision.

Defendants denied the crucial allegations of the complaint; and, by way of further answer and defense, alleged, *inter alia,* that Dawson was in the intersection, in the process of making a left turn in a lawful and proper manner, but that Hinson "failed to keep a proper lookout in that he drove his automobile at a high, excessive, and unlawful rate of speed," and in these and other respects was guilty of contributory negligence proximately causing the collision. Hinson's alleged contributory negligence was pleaded in bar of plaintiff's right to recover herein.

The court submitted nine issues, to wit:

"1. Was the plaintiff's intestate injured through the negligence of the defendants, as alleged in the Complaint? Answer: YES.

"2. If so, did the plaintiff's intestate by his own negligence contribute to such injury, as alleged in the Answer? Answer: YES.

"3. What damages, if any, is the plaintiff entitled to recover on account of medical expenses and suffering on the part of her intestate. Answer: .............

"4. Was plaintiff's intestate killed through the negligence of the defendants, as alleged in the Complaint? Answer: No.

"5. If so, did plaintiff's intestate contribute to his death by his own negligence, as alleged in the Answer? Answer: .............

"6. What damages, if any, is plaintiff entitled to recover on account of the wrongful death of her intestate? Answer: ..............

"7. Was plaintiff's intestate's automobile injured and damaged through the negligence of defendants, as alleged in the Complaint? Answer: YES.

"8. If so, did the plaintiff's intestate contribute to such injury and damages by his own negligence, as alleged in the Answer? Answer: YES.

"9. What damages, if any, is plaintiff entitled to recover for injuries to said automobile? Answer: ............."

Having answered the first, second, fourth, seventh and eighth issues, as shown above, the jury did not answer the third, fifth, sixth and ninth issues. In this the jury observed closely the instructions given by the court.

Judgment on the verdict was entered in favor of defendants. Plaintiff excepted and appealed.

*J. Faison Thomson & Son and N. W. Outlaw for plaintiff, appellant.*

*Paul B. Edmundson, John S. Peacock, and Smith, Leach, Anderson & Dorsett for defendants, appellees.*

BOBBITT, J.   Plaintiff did not separately state the alleged cause of action for wrongful death and the alleged cause of action for personal injuries between date of injury and death and property damage.  While the basis for each is the same wrongful act, the causes of action are separate and distinct.  Each should have been alleged as a separate cause of action.  The recovery in one is distributable differently from the recovery in the other.  *Hoke v. Greyhound Corp.*, 226 N.C. 332, 38 S.E. 2d 105.

However, the trial judge clarified this confusion in the pleading by submitting, without objection, issues of negligence, contributory negligence and damages as to (1) the personal injury feature, (2) the wrongful death feature, and (3) the property damage feature.   The court instructed the jury that, if the collision and resulting personal injury and property damage were caused by defendants' negligence, they would answer the first and seventh issues, "Yes."  The jury answered these issues, "Yes," in plaintiff's favor.  The court instructed the jury that, to answer the fourth issue, "Yes," plaintiff had to show further that personal injuries received by Hinson in the collision proximately caused his death.  The jury answered this issue, "No."  Apart from this one element, the questions posed by the first, fourth and seventh issues were essentially the same.

The verdict on the fourth issue will stand.  The jury did not reach the contributory negligence issue relating to alleged wrongful death.  We do not perceive that an error, involving alleged contributory negligence of Hinson, should affect the jury's verdict as to the fourth issue.  Hence, the verdict and judgment will stand as a bar to further prosecution of the alleged cause of action for wrongful death.  The new trial, ordered for reasons stated below, will be limited to issues relating to Hinson's personal injuries between the date of injury and death and the damage to his automobile.

Ordinarily, an error affecting a single issue is so interrelated with other issues that a complete new trial is awarded therefor; but here the first and seventh issues having been answered, "Yes," the only reasonable interpretation of the jury's answer, "No," to the fourth issue, is that plaintiff failed to satisfy the jury by the greater weight of the evidence that Hinson died as the result of injuries received in the collision.  In this connection, we note that Hinson died 27 January, 1954; and that Dr. Winfield Thompson, witness for plaintiff and Hinson's surgeon and physician, testified: "He did not die as a result of this injury here.  He died from a blood clot originating, outside of that injury, from the leg or thigh."

As pointed out by *Walker, J.,* ordinarily this Court will grant a partial new trial "when the error, or reason for the new trial, is confined to one issue, which is entirely separable from the others and it is perfectly clear that there is no danger of complication.  *Benton v. Collins,* 125 N.C. 83;

*Rowe v. Lumber Co.,* 133 N.C. 433." *Lumber Co. v. Branch,* 158 N.C. 251, 73 S.E. 164; *Jackson v. Parks,* 220 N.C. 680, 18 S.E. 2d 138; *Pinnix v. Griffin,* 221 N.C. 348, 20 S.E. 2d 366; *Journigan v. Ice Co.,* 233 N.C. 180, 63 S.E. 2d 183.

The operation of an automobile "in any business district" in excess of twenty miles per hour is a criminal offense, punishable by fine or imprisonment or both. G.S. 20-141; G.S. 20-38 (a); G.S. 20-176. Statutes creating criminal offenses are subject to strict construction. *S. v. Campbell,* 223 N.C. 828, 28 S.E. 2d 499, and cases cited. This applies to all such statutes, including those relating to the operation of motor vehicles. *S. v. Hatcher,* 210 N.C. 55, 185 S.E. 435; *Powers v. Reynolds Bros.,* 298 Mass. 7, 9 N.E. 2d 535. True, the violation of such criminal statute, unless otherwise provided, is held to be negligence *per se* in the trial of a civil action. *Aldridge v. Hasty,* 240 N.C. 353, 82 S.E. 2d 331. But the statute must be construed as a criminal statute. When so construed, it is applicable alike to criminal prosecutions and civil actions.

The portion of G.S. 20-38, here concerned, provides:

"Definitions of words and phrases.—The following words and phrases when used in this article shall, for the purpose of this article, have the meanings respectively prescribed to them in this section, except in those instances where the context clearly indicates a different meaning:

"(a) Business District.—The territory contiguous to a highway where *seventy-five per cent* or *more of the frontage thereon* for a distance of three hundred (300) feet or more *is occupied by buildings* in use for business purposes." (Italics added.)

It is obvious that a motorist may violate the speed statute without being involved in a collision. He does so if he operates in excess of twenty (20) miles per hour "in a business district." G.S. 20-141. A "business district" is determinable with reference to the status of the frontage on the street or highway on which he is traveling. Conditions along intersecting streets or highways are excluded from consideration. *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406. The statute so construed does not apply to a motorist, traveling on an intersecting street or highway, along which there are no buildings, as he approaches and crosses a street or highway solidly built up with business establishments. That situation is controlled by "Stop" signs, electric signals, or other statutory provisions.

What is meant by "frontage" contiguous to a highway for a distance of three hundred (300) feet? "In figuring business frontage only that part of the land contiguous to the highway which is available for buildings should be included." *Wallace v. Kramer,* 296 Mich. 680, 296 N.W. 838. Hence, it does not include an intersecting street or highway. *Mitchell v. Melts, supra.*

Do "buildings in use for business purposes" include only those in actual contact with the property line? We apprehend that this construction would be too strict. A space, reasonable in extent, intervening between the front of the building and the front property line along the street or highway and used as a means of access thereto, would not destroy the character of the building as being in "territory contiguous to a highway." (Definitions of the word "contiguous" are quoted in *Mitchell v. Melts, supra.*) But this would apply only to space encompassed by a projection or extension of the frontage of the building itself and not to open spaces, if any, out from side walls of such buildings.

This brings us to the vital question, under the facts disclosed by the present record, namely: Is the space between buildings to be included or excluded in determining whether seventy-five (75) per cent or more is occupied by buildings in use for business purposes?

Manifestly, the space occupied by a dwelling and the grounds in connection therewith must be excluded. Moreover, the statutory definition relates to frontage actually *occupied by buildings* in use for business purposes. *McGill v. Baumgart,* 233 Wis. 86, 288 N.W. 799. Hence, the inquiry to determine whether a business district exists is concerned with *buildings* along the frontage, not to premises (unoccupied by buildings) simply because used for business purposes or incident to the operations of a business establishment.

We think G.S. 20-141 and G.S. 20-38 (a), fixing the speed limit at twenty (20) miles per hour in a business district, must be construed as intended to apply primarily to sections such as solidly built up business districts. Note the definition of "business district" as given in ch. 148, Art. I, sec. (s), Public Laws of 1927; ch. 407, Art. X, sec. 103, Public Laws of 1937; and ch. 275, Public Laws of 1939, where in 1939 the proportion of the frontage on a highway for a distance of three hundred (300) feet occupied by buildings in use for business purposes was increased from fifty (50) per cent to seventy-five (75) per cent.

It is immaterial, of course, whether the section is within the corporate limits of a municipality. However, the speed limit itself, twenty (20) miles per hour, is indicative of the fact that the statutes relate only to sections where seventy-five (75) per cent or more of the relevant frontage of three hundred (300) feet is actually occupied *by buildings* in use for business purposes. A sharp distinction is drawn between "a business district" and "a residential district." In the latter, (1) the speed limit is thirty-five (35) miles per hour; and (2) it consists of the territory contiguous to a highway, not a business district, where seventy-five (75) per cent or more of the frontage thereon for a distance of three hundred (300) feet or more "is *mainly* occupied by dwellings or by dwellings and buildings in use for business purposes." G.S. 20-38 (w) 1. (Italics

added.) Compare *Baker v. Court of Special Sessions,* 125 N.J.L. 127, 15 A. 2d 102, and *McGill v. Baumgart, supra,* as to the significance of the word "mainly."

The trial judge, in his charge, gave the definition of "business district" in the exact words of G.S. 20-38 (a). He then charged: "If the road frontage on both sides of the highway No. 70 extending eastwardly from the junction for a distance of 300 feet or more than 75% of the said road frontage occupied by buildings in use for business purposes then it would be a business district; otherwise it would not be." ·

In *Mitchell v. Melts, supra,* this Court, in opinion by *Winborne, J.,* stated, in effect, that a business district exists when seventy-five (75) per cent or more of the frontage for a distance of three hundred (300) feet or more on one side of the street or highway, either side, is occupied by buildings in use for business purposes. We adhere to that view. *A fortiorari,* it is a business district when seventy-five (75) per cent or more of the total frontage on both sides for a distance of three hundred (300) feet is occupied by buildings in use for business purposes. Of course, this cannot be unless seventy-five (75) per cent or more of the frontage on at least one side is so occupied. The quoted excerpt from the charge required that the seventy-five (75) per cent be applied to the frontage on both sides, that is, a total of six hundred (600) feet, *i.e.,* three hundred (300) feet on each side. However, the error in this respect was not prejudicial to plaintiff.

The trial judge gave further instructions to the effect that, if Hinson was driving in excess of twenty (20) miles per hour in a business district as defined, such conduct was unlawful. He properly placed the burden of proof on the defendants; also, properly instructed the jury, in accordance with G.S. 20-141 (e), that defendants had the further burden of establishing such unlawful speed as the proximate cause of the collision. But analysis of the evidence leaves the definite impression that defendants' evidence was insufficient to show that Hinson, as he approached the intersection, was driving in a business district within the meaning of G.S. 20-38 (a) as construed above.

In support of their plea of contributory negligence, defendants relied heavily upon the alleged "high, excessive, and unlawful rate of speed" of Hinson. The witness Reid testified that, when Hinson passed the filling station premises known as the Gasoteria and before he heard the brakes applied, Hinson was traveling between thirty-five (35) and forty (40) miles per hour. No witness testified to a greater speed. This testimony may not be considered as tending to show a speed in excess of thirty-five (35) miles per hour. *Mitchell v. Melts, supra.* The witness Moyé testified that Hinson's speed was twenty (20) to thirty (30) miles per hour when he first saw him; and that, a short distance therefrom where the

impact occurred, his speed was between fifteen (15) and twenty (20) miles per hour. Hence, as stated in appellee's brief: "The case was tried on the theory and contentions that the collision occurred *either in a Business District* in which the speed limit was 20 miles per hour or in a *Residential District* in which the limit was 35 miles per hour."

The quoted instruction relates only to the frontage on that portion of Highway #70 extending eastwardly from the intersection. Bearing on the question under consideration, defendants offered the following evidence.

C. Beems, a licensed Surveyor, who measured the distances, "made an examination of the vicinity with the purpose of determining the number of feet along the highways, which are used for business or other purposes." Based thereon, he made a plat, defendants' Exhibit F, which was offered in evidence by defendants without limitation. The plat bears the legend "scale 1″ = 20′." It shows the highway frontage for a greater distance than three hundred (300) feet eastwardly from the intersection. It shows also the location of the buildings along this frontage.

Mr. Beems gave testimony, with reference to the plat, that, on the south side of Highway #70, east of the intersection, there was, first, Smith's Grocery Store, and "the property used for the grocery store extends . . . about 160 feet"; the next buildings, east of Smith's store, were two buildings of Whitley Milling Company, occupying about 204 feet along the highway; the next building was a cement log building, unoccupied, in process of construction; next, there was a vacant lot; and next there was a dwelling. On the north side, east of the intersection: first, there was a filling station, known as the Gasoteria, "the property of the filling station covers about 200 feet"; next, a residence covering about 60 feet; next, "about 85 feet along the front of Route 70 was used for a grocery store"; and next, there was a dwelling.

W. C. Whitley, also testifying with reference to the plat, gave testimony substantially in accord with that of Mr. Beems as stated above. Summing up his testimony, he said: "From the intersection, going eastward toward Kinston, on the south side of the road, on December 20, 1953, approximately 364 feet were occupied by business . . . On the north side of the road, from the intersection, I have an opinion that 215 feet were occupied."

Norman Stewart, plaintiff's witness, on cross-examination, testified: "The distance from the pavement where the two roads come together, back where the filling station property ends, is a little over 200 feet. I imagine it would be every bit of 300 feet. The filling station and the drive in front of the filling station covers that. On the opposite side of the filling station there was a store, and next to the store there was a building used as a mill. It was on the south side of the highway. I

Hinson *v.* Dawson.

HINSON v. DAWSON.

would not say that property occupied by the store and the mill extends along the highway further than the filling station."

Considered separately from defendants' Exhibit F, the testimony, giving every reasonable intendment to defendants, might support a finding that the section east of the intersection was a business district. But when considered in relation to defendants' Exhibit F, the portion showing the intersection and Highway #70 east thereof being reproduced herewith, it is plain that the testimony is directed to the frontage used for business purposes, or in connection with business establishments, not to the dimensions (frontage) of *buildings* in use for business purposes. No witness gives the dimensions, measured or estimated, of the *buildings*. If the scale of the plat is applied to the *buildings* shown thereon it is apparent that seventy-five (75) per cent of the frontage for 300 feet or more east of the intersection is not occupied by *buildings* in use for business purposes. It appears clearly that the witnesses included in their testimony, without distinction or defining their limits, the unoccupied spaces between the intersecting highway and the first buildings on the north and south sides of Highway #70 and the unoccupied spaces between the buildings, whether in use for business purposes or as dwellings.

For the reasons stated, defendants' evidence was insufficient to support a finding that Hinson, in approaching the point of collision, was driving "in a business district" within the meaning of G.S. 20-38 (a). On account thereof, there must be a new trial on the cause of action relating to Hinson's injuries and the damages to his automobile.

What we have said relates solely to what constitutes a violation of the statutory provision as to speed in a business district. Speed in violation of such statute is unlawful, and also negligence *per se.* Whether the statutory violation was a proximate cause of collision is another matter. Proximate cause will be for the court or jury, depending upon the facts and circumstances of the particular case. Too, it is to be borne in mind that a speed less than twenty (20) miles per hour, either in a business district, residential district or elsewhere, if "greater than is reasonable and prudent under the conditions then existing," is unlawful and negligence *per se.* G.S. 20-141 (a), (c).

We are advertent to the fact that G.S. 20-38 (a) has not been construed previously by this Court in relation to the point on which our decision rests; and that the trial judge, whose conduct of the trial deserves high commendation, was without chart or guidance as to the construction we would place thereon. Our trial courts are called upon so frequently to apply G.S. 20-38 (a) that we have undertaken herein to clarify to some extent its meaning as applied to factual situations similar to that presented in this case.

Questions posed by other assignments of error may not arise when the cause is tried again.

Partial new trial.

BARNHILL, C. J., took no part in the consideration or decision of this case.