GEORGE E. STETSON, ADMINISTRATOR OF THE ESTATE OF JOHN EDWARD STETSON v. DR. W. E. EASTERLING, DR. ROBERT K. CREIGHTON, DR. JOSEPH PEDORELLA, AND DR. LEONARD PALUMBO.

(Filed 14 June 1968.)

**1. Death § 3—**

The right of action for wrongful death exists only by virtue of G.S. 28-173, which defines the right of action, and G.S. 28-174, which defines the basis on which damages may be recovered.

**2. Same—**

The statutory action for wrongful death vests in the personal representative of the deceased.

**3. Same—**

The right of action for wrongful death is limited to those instances where the injured party, had he lived, could have maintained such action. G.S. 28-173.

**4. Infants § 4—**

A child born alive has a right of action to recover damages for prenatal injuries negligently inflicted upon him.

**5. Death §§ 3, 8—**

Where a person is injured and later dies as a result of the negligence of another, his personal representative may recover (1) as an asset of the estate, damages for pain and suffering and hospital and medical expenses, and (2) for the benefit of the next of kin, the pecuniary loss resulting from his death.

**6. Death § 3—**

The Wrongful Death Act does not provide for the recovery of punitive or nominal damages but limits recovery to the pecuniary loss resulting from the death.

**7. Same—**

Negligence alone, without pecuniary injury resulting from the death, does not create a cause of action for wrongful death.

**8. Same—**

A complaint alleging that the death of an infant, following a live birth, was caused by prenatal injuries negligently inflicted by defendants, and that prior to defendants' negligence the unborn baby "was a healthy,

normal baby boy" *is held* subject to demurrer for failure to allege the wrongful death of the child resulted in pecuniary damage to the estate, since it would be sheer speculation to attempt to assess damages resulting from such death as of the time of the alleged negligently inflicted fatal injuries.

HUSKINS, J., took no part in the consideration or decision of this case.

LAKE, J., dissenting.

HIGGINS, J., joins in the dissenting opinion.

APPEAL by plaintiff from *McKinnon, J.,* March 1967 Session of ORANGE, docketed and argued as No. 849 at Fall Term 1967.

Administrator's action to recover damages for the alleged wrongful death of John Edward Stetson, heard below on demurrers to the complaint, to wit, (1) the joint demurrer of defendants Easterling and Creighton, and (2) the separate demurrer of defendant Palumbo. (Dr. Joseph Pedorella, named as a defendant, was not served with process.)

The complaint alleges in substance, except where quoted, the following:

John Edward Stetson, plaintiff's intestate, was born September 27, 1965, about 5:34 a.m. He died, "after living only a few months," from prenatal (brain) injuries suffered on account of lack of oxygen during birth.

An examination of Mary T. Stetson, the mother, on September 17, 1965, revealed the baby was "in a transverse lie with a high head." X-Rays, taken at the hospital on September 27, 1965, about 2:00 a.m., revealed the baby "was in a left occiput with a transverse lie position, and that the head of the baby had not engaged in the vaginal canal." Between 1:45 a.m. and 3:20 a.m., when the cervix of the mother was dilated "at least 5-6 cms," and about 5:00 a.m. when dilated 6-7 cms, "the head of the baby . . . had not engaged in the vaginal canal." Consent for a Cesarean section was given. It should have been but was not performed. Instead, following rupture of the membranes, "an internal and external version with breech extraction" was performed. The umbilical cord prolapsed into the vaginal canal where the baby's head clamped down on it. This cut off the vital supply of oxygen to the baby and caused the brain damage existing at birth.

The intestate's said prenatal injuries and death resulting therefrom were proximately caused by the negligence of the several defendants in the respects set forth. Prior to defendants' alleged negligent conduct, the (unborn) baby "was a healthy, normal baby boy."

The ground of demurrer is that the complaint does not state facts

sufficient to constitute a cause of action, each demurrer asserting *inter alia* that plaintiff's allegations disclose the intestate did not have and could not acquire any earning capacity.

Judgment sustaining both demurrers was entered. Plaintiff excepted and appealed.

*Seawell, Van Camp & Morgan and Sawyer & Loftin for plaintiff appellant.*

*Smith, Leach, Anderson & Dorsett for defendant appellees Dr. W. E. Easterling and Dr. Robert K. Creighton.*

*Dupree, Weaver, Horton, Cockman & Alvis for defendant appellee Dr. Leonard Palumbo.*

BOBBITT, J. For purposes of decision on this appeal, we assume, *but do not decide,* that the facts alleged by plaintiff are sufficient to support a finding that the death of John Edward Stetson, hereafter referred to as "John," was proximately caused by the negligence of defendants.

In *Gay v. Thompson,* 266 N.C. 394, 146 S.E. 2d 425, 15 A.L.R. 3d 983, this Court, passing upon a question of first impression in this jurisdiction, held that, "under our Death Act, G.S. 28-173, 174, there can be no right of action for the wrongful prenatal death of a viable child *en ventre sa mere.*" It was held that defendant's demurrer to complaint should have been sustained and the action dismissed. The grounds on which our decision was based are clearly and tersely stated by Parker, J. (now C.J.), in the following excerpts from the opinion: (1) "The Court has consistently held that G.S. 28-173, 174, which gives the right of action for wrongful death, confines the recovery to 'such damages as are a fair and just compensation for the pecuniary injury resulting from such death,' and by the express language of G.S. 28-174 this is a prerequisite to the right to recover damages under our wrongful death statute." (2) "Negligence alone, without 'pecuniary injury resulting from such death,' does not create a cause of action." (3) "(T)here can be no evidence from which to infer 'pecuniary injury resulting from' the wrongful prenatal death of a viable child *en ventre sa mere;* it is all sheer speculation." It was not considered necessary to decide in *Gay* "the debatable question as to whether a viable child *en ventre sa mere,* who is born dead, is a *person* within the meaning of our wrongful death act." (Our italics.) Compare *Graf v. Taggert,* 43 N.J. 303, 204 A. 2d 140 (1964).

The question now presented is whether, upon the facts alleged, the administrator can maintain an action "under our Death Act, G.S. 28-173, 174," to recover for the death of his intestate who, "af-

ter living only a few months," died as the result of prenatal injuries allegedly caused by the negligence of defendants.

The right of action for wrongful death exists only by virtue of the statute now codified as G.S. 28-173, which defines the right of action, and G.S. 28-174, which defines the basis on which damages may be recovered. *Armentrout v. Hughes,* 247 N.C. 631, 101 S.E. 2d 793, 69 A.L.R. 2d 620, and cases cited.

G.S. 28-173 in pertinent part provides: "When the death of a person is caused by a wrongful act, neglect or default of another, *such as would, if the injured party had lived, have entitled him to an action for damages therefor,* the person or corporation that would have been so liable, and his or their executors, administrators, collectors or successors shall be liable to an action for damages, to be brought by the executor, administrator or collector of the decedent; . . ." (Our italics.)

The statutory action for wrongful death vests in the personal representative of the deceased. *Bank v. Hackney,* 266 N.C. 17, 145 S.E. 2d 352, and cases cited. This right of action "is limited to 'such as would, if the injured party had lived, have entitled him to an action for damages therefor.'" *Goldsmith v. Samet,* 201 N.C. 574, 160 S.E. 835; *Horney v. Pool Co.,* 267 N.C. 521, 523, 148 S.E. 2d 554, 556. Hence, our first question is whether John, if he had lived, could have maintained an action to recover damages on account of injuries he sustained while *en ventre sa mere.*

In Prosser on Torts, 3rd Edition (1964), § 56, it is stated: (1) "When a pregnant woman is injured, and as a result the child subsequently born suffers deformity or some other injury, nearly all of the decisions prior to 1946 denied recovery to the child." (2) "All writers who have discussed the problem have joined in condemning the old rule, in maintaining that the unborn child in the path of an automobile is as much a person in the street as the mother, and in urging that recovery should be allowed upon proper proof." (3) "Beginning with a decision in the District of Columbia in 1946 (*Bonbrest v. Kotz,* 65 F. Supp. 138), a series of more than thirty cases, many of them expressly overruling prior holdings, have brought about the most spectacular abrupt reversal of a well-settled rule in the whole history of the law of torts." (4) "So rapid has been the overturn that at the time of publication nothing remains of the older law except decisions, not yet overruled, in Alabama, Rhode Island, and Texas." Since then Rhode Island, in *Sylvia v. Gobeille,* 220 A. 2d 222 (1966), and Texas, in *Leal v. C. C. Pitts Sand and Gravel, Inc.,* 419 S.W. 2d 820 (1967), have overruled their prior decisions.

In this jurisdiction, the question is one of first impression. Numerous decisions, texts and Law Review articles set forth elaborately the reasons underlying the rule now generally accepted. See Prosser, *op. cit. supra,* § 56; 10 A.L.R. 2d 1059; 27 A.L.R. 2d 1256, and Later Case Service; *Smith v. Brennan,* 157 A. 2d 497 (N.J. 1960); *Seattle-First National Bank v. Rankin,* 367 P. 2d 835 (Wash. 1962); *Sylvia v. Gobeille, supra.*

In *Gay v. Thompson, supra,* Parker, J. (now C.J.), referring to the question now under consideration, said: "Since the child must carry the burden of infirmity that results from another's tortious act, it is only natural justice that it, if born alive, be allowed to maintain an action on the ground of actionable negligence." The quoted statement is adopted as authoritative in this jurisdiction.

Having decided John, if he had lived, could have maintained an action to recover damages on account of injuries negligently inflicted upon him when *en ventre sa mere,* there remains for decision whether, upon his death as the result of such prenatal injuries, his administrator can maintain this action for his wrongful death.

In this jurisdiction, where a person is injured and later dies as a result of the negligence of another, his administrator has two causes of action, namely, (1) a cause of action to recover, as general assets of the estate, damages on account of the decedent's pain and suffering and on account of his hospital and medical expenses, and (2) a cause of action to recover, for the benefit of his next of kin, damages on account of the *pecuniary loss* resulting from his death. *Sharpe v. Pugh,* 270 N.C. 598, 155 S.E. 2d 108; *In re Peacock,* 261 N.C. 749, 136 S.E. 2d 91; *Hinson v. Dawson,* 241 N.C. 714, 86 S.E. 2d 585; *Hoke v. Greyhound Corp.,* 226 N.C. 332, 38 S.E. 2d 105.

The complaint herein purports to allege one cause of action, to wit, a cause of action for the wrongful death of John. Whether plaintiff is entitled to recover depends solely upon provisions of "our Death Act, G.S. 28-173, 174," which "does not provide for the assessment of punitive damages, nor the allowance of nominal damages in the absence of pecuniary loss." *Armentrout v. Hughes, supra.* "The statute, G.S. 28-174, leaves no room for sentiment. It confers a right to compensation only for pecuniary loss." *Scriven v. McDonald,* 264 N.C. 727, 142 S.E. 2d 585.

As succinctly stated in *Gay v. Thompson, supra:* "Negligence alone, without 'pecuniary injury resulting from such death,' does not create a cause of action."

In *Gay v. Thompson, supra,* recovery was denied on the ground that "damages may not be assessed on the basis of sheer speculation, devoid of factual substantiation." Here, as in *Gay,* plaintiff alleged

the viable unborn child was "a healthy, normal baby boy." Here, as in *Gay*, it would be "sheer speculation" to attempt to assess damages as of the time of the alleged negligently inflicted fatal injuries. With reference to conditions after birth, plaintiff alleged John had incurred brain damage during birth; and that, because of such brain damage, John "could not swallow," — "had to be fed by the use of a tube," — "a thick mucus" that formed in and about his mouth and nose "had to be removed by the use of a suction device," — "had no eye blink."

On the ground plaintiff's allegations are insufficient to show John's estate has suffered pecuniary loss on account of his death, the judgment sustaining the demurrers must be affirmed.

We are advertent to the fact *the result* reached herein is in conflict with *the result* reached in decisions elsewhere. Decisions in other jurisdictions holding a complaint (petition) alleging the death of an infant, following a live birth, was caused by prenatal injuries negligently inflicted by the defendant(s), was sufficient to withstand a demurrer, motion to strike or motion to dismiss, include the following: *Jasinsky v. Potts*, 92 N.E. 2d 809 (Ohio 1950); *Amann v. Faidy*, 114 N.E. 2d 412 (Ill. 1953); *Steggall v. Morris*, 258 S.W. 2d 577 (Mo. 1953); *Prates v. Sears, Roebuck and Company*, 118 A. 2d 633 (Conn. 1955); *Hall v. Murphy*, 113 S.E. 2d 790 (S.C. 1960); *Shousha v. Matthews Drivurself Service, Inc.*, 358 S.W. 2d 471 (Tenn. 1962); *Torigian v. Watertown News Co.*, 225 N.E. 2d 926 (Mass. 1967); *Leal v. C. C. Pitts Sand and Gravel, Inc., supra.*

There are marked differences between the statutory provisions in force in these jurisdictions and "our Death Act, G.S. 28-173, 174." Only the Ohio and Illinois statutes contain the phrase "pecuniary injury." In these jurisdictions, apparently no formula or rule has been adopted for determining "pecuniary injury," such as the rule well established in this jurisdiction and set forth in *Lamm v. Lorbacher*, 235 N.C. 728, 71 S.E. 2d 49, and cases cited. Too, it is noted that in Illinois, contrary to the North Carolina rule set forth in *Armentrout v. Hughes, supra*, nominal damages are recoverable in an action for wrongful death. Annotation, "Recovery of nominal damages in a wrongful death action," 69 A.L.R. 2d 628, 634-636. As to this, the Ohio rule is regarded as unsettled. *Id.* at 645.

No questions are presented or determined on this appeal with reference to whether the mother has a cause of action and, if so, the basis and extent thereof, or as to whether a parent has a cause of action for money expended and liability incurred in the care and treatment of John during the months he was alive.

On the grounds stated above, the judgment of the court below is affirmed.

Affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.

LAKE, J., dissenting: I dissent for the reason that this is an appeal from a judgment sustaining a demurrer to the complaint for failure to allege facts constituting a cause of action. In such a situation, we must accept as true all facts properly alleged, together with all relevant inferences reasonably deducible from such allegations. *Gay v. Thompson,* 266 N.C. 394, 146 S.E. 2d 425; *McLeod v. McLeod,* 266 N.C. 144, 146 S.E. 2d 65; Strong, N. C. Index, Pleading, § 12, and cases cited; McIntosh, North Carolina Practice and Procedure, 2d ed., § 1191; and cases cited. The allegations of the complaint must be liberally construed in favor of the plaintiff. *Hood v. Coach Co.,* 246 N.C. 684, 99 S.E. 2d 925.

The majority opinion assumes, for the purposes of this appeal, that the complaint alleges negligence of the defendants which was the proximate cause of this child's death a few months after birth. In my opinion the allegations of the complaint are sufficient in this respect. The basis upon which the majority opinion rests is that the complaint does not allege that the alleged wrongful death of the child resulted in pecuniary damage to his estate. If the majority's premise were sound its conclusion would be. *Greene v. Nichols,* decided this day; *Gay v. Thompson, supra.*

The complaint alleges: "[P]rior to defendants' negligence and carelessness as before mentioned [*i.e.,* immediately prior to birth], the said baby was a *healthy, normal* baby boy." (Emphasis supplied.) Upon trial, the burden would be upon the plaintiff to prove this, but upon demurrer to the complaint we must treat it as if it were an established fact. It is my view that the presence of the allegation of the health and normality of the deceased in this case and the absence of any comparable evidence as to the condition of the deceased in *Greene v. Nichols, supra,* prior to her death, is a material distinction between the two cases and sufficient to cause that case to fall outside and this one to fall within the boundary of the zone in which recovery for wrongful death is permitted under the statute.

In *Russell v. Steamboat Co.,* 126 N.C. 961, 36 S.E. 191, this Court allowed recovery for wrongful death of a baby boy only five months old upon evidence that, prior to the negligence of the de-

fendant, the baby "had never been sick." This Court, speaking through Douglas, J., said:

"This case as presented to us, raises the sole question whether more than nominal damages are recoverable for the negligent killing of an infant, incapable of earning anything, *without direct evidence of pecuniary damage other than sex, age and condition of health of the deceased.* In the very nature of things a child five months old has no present earning capacity, and has not reached a sufficient state of development to furnish any indication of his probable earning capacity in the future, *other than the fact of being a healthy boy. This is all we know of him or ever can know.* (Emphasis added.)

\*      \*      \*

"Upon the greater and better weight of authority, as well as our own convictions of natural justice and of public policy, we are constrained to hold that the plaintiff can recover substantial damages in the case at bar."

I am unable to distinguish the facts admitted by the demurrer in this case from those established by the evidence in the *Russell* case, and therefore am of the opinion that the demurrer should have been overruled.

HIGGINS, J., joins in the dissenting opinion.