ANTHONY MICHAEL DiDONATO AS ADMINISTRATOR OF THE ESTATE OF JOSEPH EDWARD DiDONATO v. WILLIAM J. WORTMAN, JR., M.D. AND JOHN T. HART, M.D.

No. 8526SC1015

(Filed 1 April 1986)

**Death § 3— unborn fetus—no wrongful death action**

There is no right of recovery under the North Carolina wrongful death statute for the death of an unborn fetus. Rather, a child must be born alive to be recognized as a "person" within the meaning of the wrongful death statute. N.C.G.S. § 28A-18-2.

Judge PHILLIPS dissenting.

APPEAL by plaintiff from *Grist, Judge.* Judgment entered 17 July 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 6 February 1986.

This is an action for wrongful death and wrongful deprivation of life, brought by plaintiff on behalf of Joseph Edward DiDonato, who died prior to birth.

The undisputed facts are that Norma DiDonato became pregnant in 1982, when she was 36. She had a family history of diabetes. Norma DiDonato received prenatal care from defendants, who monitored her vital signs and those of the developing fetus. Delivery was due in early October 1982. A test on 26 October 1982 showed the fetus to be alive and healthy. On 30 October 1982, however, no fetal heartbeat could be detected. A 12 pound 11 ounce stillborn fetus was delivered by Caesarean section.

Plaintiff alleged that because of the family history of diabetes and the presence of increased levels of blood sugar in Norma DiDonato's blood, defendants should in the exercise of reasonable care have diagnosed the diabetic condition and delivered the baby

before it outgrew its blood and oxygen supply as a consequence of the high blood sugar level. Their failure to do so resulted in the wrongful death of plaintiff's intestate, triggering this action.

Defendants moved to dismiss on the ground that there is no right of recovery under the North Carolina wrongful death statute for the death of an unborn child. The court allowed the motion, and plaintiffs appealed.

*James, McElroy & Diehl, by Gary S. Hemric, for plaintiff-appellant.*

*Golding, Crews, Meekins, Gordon & Gray, by John G. Golding and Andrew W. Lax, for defendant-appellees.*

EAGLES, Judge.

The only question presented by this appeal is whether a viable child *en ventre sa mere* who dies as a result of a third party's negligence may obtain civil redress under our wrongful death statute, G.S. 28A-18-2. On appeal, plaintiff has apparently abandoned his analogous non-statutory claim for "wrongful deprivation of life."

The Supreme Court has not passed directly on the question before us. In *Gay v. Thompson*, 266 N.C. 394, 146 S.E. 2d 425 (1966), the court reserved the question, but held that the speculative nature of damages required dismissal of plaintiff's action. The court has apparently recognized that a physician rendering prenatal care owes some duty of care to a fetus *in utero*, provided there is a live birth. *Azzolino v. Dingfelder*, 71 N.C. App. 289, 297, 322 S.E. 2d 567, 574 (1984) [explaining *Stetson v. Easterling*, 274 N.C. 152, 161 S.E. 2d 531 (1968)], *aff'd in part, rev'd in part*, 315 N.C. 103, 337 S.E. 2d 528 (1985), *reh'g denied*, --- N.C. ---, --- S.E. 2d --- (1986). In reversing in *Azzolino*, the Supreme Court simply assumed *arguendo* that this duty existed, over dissent. *Id.* (Martin, J., dissenting in part). As in *Gay*, the *Azzolino* decision turned chiefly on the speculative nature of damages, not the legal definition of "person."

In *Cardwell v. Welch*, 25 N.C. App. 390, 213 S.E. 2d 382, *cert. denied*, 287 N.C. 464, 215 S.E. 2d 623 (1975), this court expressly held that a child must be born alive to be recognized as a "person" within the meaning of G.S. 28-173, now G.S. 28A-18-2. We did

so upon careful review of the legislative history and authority of other jurisdictions, holding that creation of a right of action for wrongful death of an unborn fetus was an appropriate subject for legislative action, not judicial construction. We followed *Cardwell* in *Yow v. Nance*, 29 N.C. App. 419, 224 S.E. 2d 292, *disc. rev. denied*, 290 N.C. 312, 225 S.E. 2d 833 (1976). *But see Perry v. Cullipher*, 69 N.C. App. 761, 318 S.E. 2d 354 (1984) (rejecting contention that no right of action exists for desecration of grave of stillborn fetus). In *Stam v. State*, 47 N.C. App. 209, 267 S.E. 2d 335 (1980), *aff'd in relevant part*, 302 N.C. 357, 275 S.E. 2d 439 (1981), we held that, even upon a liberal construction, a fetus was not a "person" enjoying unlimited protection under N.C. Const. Art. I, Section 1 and Section 19. Reviewing the common law in *Stam*, we noted that property rights accorded to the unborn were always subject to live birth as a condition precedent. We are also advertent to the United States Supreme Court's ruling that the word "person" in the Fourteenth Amendment does not include the unborn. *Roe v. Wade*, 410 U.S. 113, 35 L.Ed. 2d 147, 93 S.Ct. 705, *reh'g denied*, 410 U.S. 959, 35 L.Ed. 2d 694, 93 S.Ct. 1409 (1973). These precedents are persuasive.

We do not have authority to overrule our Supreme Court. *Cannon v. Miller*, 313 N.C. 324, 327 S.E. 2d 888 (1985). We therefore must hold, on the authority of *Gay v. Thompson, supra*, and following *Cardwell, Yow,* and *Stam,* that the trial court correctly dismissed plaintiff's action.

The issue is properly a subject for legislative attention and ought not be the subject of judicial intervention. We note that the General Assembly recently considered a bill that would have made it a crime to knowingly or recklessly cause the death of a viable fetus. H.B. 1276, 1985 General Assembly. While not directly on point in the instant case, the fact that this bill failed to pass seems to suggest a continuing legislative refusal to expand the concept of "person" beyond the current state of the law. The judiciary should not assume a more active role on what is essentially a legislative issue.

We are aware of the conflicting policy considerations raised by this case, including strong arguments for changing existing law. However, this Court is not the proper forum for making these changes. The decision of the trial court is therefore

Affirmed.

Judge ARNOLD concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion G.S. 28A-18-2 as now written authorizes plaintiff's action and *Gay v. Thompson*, 266 N.C. 394, 146 S.E. 2d 425 (1966) has no application to this case and the order appealed from should be reversed.

A "person," according to the common understanding of mankind if the dictionaries they use are any guide, is simply a human being. Nothing in the Wrongful Death Act or its history suggests that the word meant anything else to the General Assembly, but much indicates that it did not. The General Assembly frequently exercises its power to give words and phrases special meaning and if it had intended for the word "person" to have a limited application, it could have easily accomplished that purpose. Since there is no reason for supposing that the General Assembly intended the act to apply to less than all the human beings in this state, I view the restrictive definition coined by a panel of this Court in *Cardwell v. Welch*, 25 N.C. App. 390, 213 S.E. 2d 382, *cert. denied*, 287 N.C. 464, 215 S.E. 2d 623 (1975) as a judicial interpolation that should be disavowed, rather than followed. A viable, healthy 12-pound boy at term immediately before birth is certainly a human being and plaintiff's action is authorized in my opinion under both the language and spirit of the act.

*Gay v. Thompson* arose under G.S. 28-173, 174, our former Wrongful Death Act, and its only possible bearing on this case is that the court's failure there to recognize that ascertainable damages could result from the wrongful death of viable, healthy children ready to be born was one of the reasons the Legislature

replaced G.S. 28-174, the damages part of the old act, with what is now subsection (b) of G.S. 28A-18-2. Other reasons for that step were holdings denying recovery for the deaths of unemployed housewives, *Lamm v. Lorbacher*, 235 N.C. 728, 71 S.E. 2d 49 (1952), elderly persons no longer capable of earning wages, *Armentrout v. Hughes*, 247 N.C. 631, 101 S.E. 2d 793 (1958), mentally retarded people, *Scriven v. McDonald*, 264 N.C. 727, 142 S.E. 2d 585 (1965), and infants a few months old whose injuries occurred before they were born, *Stetson v. Easterling*, 274 N.C. 152, 161 S.E. 2d 531 (1968). In these and other cases recovery was denied upon the ground that no pecuniary injury resulted from the deaths involved, a patently fallacious ground, since some decedents were performing services of great value for their families; the expectancies of healthy children at all steps after becoming viable can be easily established by evidence and public records for more than a hundred years show that nearly all children that survive become wage earners; and it is elementary law that the difficulty of proving damages does not exonerate wrongdoers who create the difficulty. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265, 90 L.Ed. 652, 660, 66 S.Ct. 574, 580, *reh. denied*, 327 U.S. 817, 90 L.Ed. 1040, 66 S.Ct. 815 (1946). In all events, these and other obstacles to recovery, which had greatly limited the application and scope of our Wrongful Death Act, were removed when the 1969 General Assembly replaced G.S. 174, the damages part of the act, with what is now subsection (b) of G.S. 28A-18-2. In doing so the General Assembly made plain, both through the amendment and the enacting clause, that the new law corrected the deficiencies of the old, that the difficulty of proving damages was no longer a bar to recovery, and that the act applied to all human beings wrongfully killed in the state. The Act's enacting clause is as follows:

WHEREAS, human life is inherently valuable; and

WHEREAS, the present statute is so written and construed that damages recoverable from a person who has caused death by a wrongful act are effectually limited to such figure as can be calculated from the expected earnings of the deceased, which is far from an adequate measure of the value of human life; Now, therefore,

The General Assembly of North Carolina do enact:

And the enactment eliminated any basis forever dismissing a wrongful death claim on the ground that no damage resulted from the death by authorizing the recovery of nominal damages, as well as damages for lost services, society, assistance and companionship.

In my opinion, the dismissal of this action was without legal basis and I vote to reverse the order appealed from.