COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* COÖPERATIVE LEAGUE OF AMERICA.

Suffolk.   March 7, 1923. — September 14, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Corporation,* Foreign.   *Voluntary Association.   Commissioner of Corporations. Equity Pleading and Practice,* Parties.   *Words,* " Person."

A bill in equity, filed by the commissioner of corporations and taxation under G. L. c. 107, §§ 7, 8, to restrain the defendant from continuing business in this Commonwealth, alleged that the defendant was " a foreign association or organization operating under an agreement and deed of trust, filed in Alleghany County, Pennsylvania, having its home office in Pittsburgh, Pennsylvania, and having a branch office where it does business in the city of Springfield in the county of Hampden and Commonwealth of Massachusetts; " that the business consisted of issuing so-called " 3% loan and home purchasing contracts," each being one of a series and providing for payments in monthly instalments, the creation of a trust fund into which were paid, among other sums, all instalments less certain deductions, repayments of loans and interest, and profits from forfeitures; and the making of loans for the improvement of real estate, payment of incumbrances thereon, or similar purposes to holders of contracts in the order of the date of their respective contracts, or the sale of the loan privilege for their benefit; that in its essence the business was in accordance with a plan by which contract holders were to pay the sums stated in their contracts in instalments and to have the privilege of securing loans in the numerical order of their contracts.   The defendant demurred.   *Held,* that

(1) The word " person," as used in G. L. c. 107, § 7, is broad enough to include the defendant;

(2) The question, *whether* in truth the defendant was simply an unincorporated voluntary association of such a nature as to constitute its members copartners, or was an organization of such character as to be rightly subject to the laws of this Commonwealth as a foreign corporation, or was on other grounds within the scope of G. L. c. 107, §8, was not presented by the record;

(3) The Legislature has power to authorize suits against an association or organization in the name adopted as the designation of the group of people constituting the association, whatever may be the limitations of the common law, and the provisions of G. L. c. 107, § 8, expressly confer that authority;

(4) The discrimination created by G. L. c. 107, § 8, by providing a remedy by injunction against foreign corporations, associations or organizations which it does not provide against domestic corporations, is a rational discrimination in its scope and effect in relation to the main object sought to be accomplished by the statute, and is constitutional;

(5) The averments in the bill and a comparison of them with a specimen copy of the contract issued by the defendant showed a business of the character prohibited by G. L. c. 107, § 7;

(6) The allegation that the defendant had a branch office in Springfield, "where it does business," was enough as a matter of pleading to show continuance of violations and threatened violations of the law which might require injunctive relief.

BILL IN EQUITY, filed in the Superior Court on June 22, 1921, under G. L. c. 107, §§ 7, 8, to restrain the defendant from continuing its business in this Commonwealth. The allegations of the bill are described in the opinion.

The defendant demurred to the bill upon the following grounds:

" 1. That it does not appear from the bill of complaint that the plaintiff . . . has any jurisdiction over, interest in, or claim against this defendant.

" 2. That it appears from the bill of complaint and is a fact, that the plan of the defendant in conducting business as alleged is not prohibited by the laws of the Commonwealth and does not make the defendant subject to the provisions of G. L. c. 107, § 7.

" 3. That the plan alleged does not call for the redemption of any bonds, certificates, or obligations in numerical order of precedence without reference to the amount of previous payments. That the contract described in the bill of complaint is not such a contract as the provisions of G. L. c. 107, § 7, apply to.

" 4. That the bill of complaint does not set out a cause of action nor any condition or situation giving the court jurisdiction over the defendant and their method of doing business nor giving ground for equitable relief.

" 5. That the enforcement of the statute, so far as it

relates to this defendant, would be an interference with interstate contracts.

" 6. That the bill of complaint contains no allegation that the defendant is now doing business in this Commonwealth nor that it has any property in this Commonwealth for which a receiver could be appointed."

The demurrer was overruled by *Sanderson,* J. The defendant appealed. The judge, with the consent of the parties, reported the questions raised by the demurrer and the appeal to this court for determination, a permanent injunction to issue as prayed for, if the decree overruling the demurrer was affirmed.

*H. Parker,* for the defendant.

*A. Lincoln,* Assistant Attorney General, for the plaintiff.

Rugg, C.J. This is a proceeding in equity to restrain the defendant from continuing its business in this Commonwealth. It is brought under G. L. c. 107, §§ 7 and 8, which are in these words: " Section 7. No person shall issue, negotiate or sell any bonds, certificates or obligations of any kind, which are by the terms thereof to be redeemed in numerical order or in any arbitrary order of precedence without reference to the amount previously paid thereon by the holder thereof, whether they are sold on the instalment plan or otherwise, nor shall any person redeem any bonds, certificates or obligations in such order, whether they are sold on the instalment plan or otherwise. Section 8. Violations of the preceding section shall be punished by a fine of not more than two thousand dollars or by imprisonment for not more than one year. Any such violation, if by a domestic corporation, shall operate as a forfeiture of its franchise and, if by a foreign corporation, association or organization, as a discontinuance of its right to do business in the Commonwealth; and the Supreme Judicial or Superior Court, upon the application of the commissioner of corporations and taxation, may enjoin such foreign corporation, association or organization from further continuing its business in the Commonwealth."

The defendant is alleged in the petition to be " a foreign association or organization operating under an agreement

and deed of trust, filed in Alleghany County, Pennsylvania, having its home office in Pittsburg, Pennsylvania . . . ." This averment must be accepted as true upon demurrer.

The word " person " in § 7 is broad enough to include the defendant. It is provided by G. L. c. 4, § 7, cl. 23, that in construing statutes, unless inconsistent with the manifest intent of the Legislature or repugnant to its context, the word " person " shall include " corporations, societies, associations and partnerships." See *Opinion of the Justices,* 196 Mass. 603, 626. The defendant therefore was as matter of statutory construction capable of offending against the provisions of § 7. In view of these specific descriptive allegations touching the nature of the defendant, it must be assumed in a case presented on demurrer to come within the sweep of § 8 and to be subject to the petition for injunction there authorized. Whether in truth the defendant is simply an unincorporated voluntary association of such nature as to constitute its members copartners, *Ashley* v. *Dowling,* 203 Mass. 311; *Frost* v. *Thompson,* 219 Mass. 360; *Edwards* v. *Warren Linoline & Gasoline Works,* 168 Mass. 564, or an organization of such character as to be rightly subject to our laws as a foreign corporation, *Oliver* v. *Liverpool & London Life & Fire Ins. Co.* 100 Mass. 531; *Liverpool Ins. Co.* v. *Massachusetts,* 10 Wall. 566, or on other grounds within the scope of § 8, are issues not presented on this record. Those questions might arise upon a full report of relevant facts, from which it might be determined whether that portion of the decision of *Attorney General* v. *Pitcher,* 183 Mass. 513, 519, was applicable to the effect that the statute does not authorize suits in equity against individuals. It is enough to say that the allegations of the bill on the record as it is describe a defendant within the scope of §§ 7 and 8, that there has been a general appearance, and that a demurrer has been filed admitting for the purposes of this decision the truth of the allegations. These factors require the overruling of the demurrer on this point.

Authority is conferred upon the plaintiff by the explicit words of § 8 to ask for an injunction against such an organization as the defendant is described to be from continuing its

business in this Commonwealth after violation of the prohibition of § 7. Whatever may be the limitations at common law as to suits by or against an association or organization in the name adopted as a designation of the group of people constituting the association, *Pickett* v. *Walsh,* 192 Mass. 572, 590, there can be no doubt about the power of the Legislature to authorize suits or actions at law against such associations or organizations. *United Mine Workers of America* v. *Coronado Coal Co.* 259 U. S. 344, 383–392. *Camden, Gloucester & Woodbury Railroad* v. *Guarantors of Pennsylvania,* 30 Vroom, 328.

There is provided in § 8 an additional procedure for enforcement of suspension of the business prohibited by § 7 with respect to a foreign corporation, association or organization to that provided with respect to a domestic corporation, association or organization, in that injunction is allowed against the former but not against the latter from further continuing its prohibited business in this Commonwealth. It is contended that this violates the constitutional rights of the defendant to equal protection of the laws secured by the Constitution of the United States and that of this Commonwealth. The statute seems to us not to be open to successful assault on this ground. " The Legislature is permitted to make a reasonable classification and before a court can interfere with the exercise of its judgment it must be able to say ' that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched.' " *Barrett* v. *Indiana,* 229 U. S. 26, 30. *Commonwealth* v. *Libbey,* 216 Mass. 356. *Bogni* v. *Perotti,* 224 Mass. 152, 157. *Commonwealth* v. *Titcomb,* 229 Mass. 14. *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 78.

Discriminations established by statutory classification must be rational in scope and effect and bear some manifest relation to the main object sought to be accomplished by the statute. The present statute is designed to prevent the doing of the inhibited business by everybody within the limits of the Commonwealth. It seems to us that the Legislature might believe with reason that criminal prosecu-

tion provided for all violators of the law might in practical operation be less effective against nonresident corporations, organizations and associations than against domestic corporations, associations and organizations, and that the declared policy of the Commonwealth as to the former could not be readily enforced without the aid of injunctive relief. As to offending domestic corporations *quo warranto* would be available, a doubtful remedy against foreign organizations. Criminal prosecution against residents of the Commonwealth might be thought sufficiently prohibitive of the condemned conduct and not equally efficacious as a remedy against nonresidents who are beyond the immediate grasp of our criminal processes. The constitutionality of G. L. c. 260, § 9, whereby different provisions are made with respect to the limitation of actions against nonresidents from those applicable to residents, never has been doubted although there has been much litigation concerning it. *Nichols* v. *Vaughan*, 217 Mass. 548.

This branch of the case at bar appears to stand under the protecting shelter of several decisions of the Supreme Court of the United States concerning statutes indistinguishable in principle from the one here involved. State statutes permitting attachment against a nonresident debtor without bond while requiring a bond in attachment against a resident debtor, *Central Loan & Trust Co.* v. *Campbell Commission Co.* 173 U. S. 84, 97–99, requiring a nonresident who brings an action in court to give a bond for costs although such bond is not required of a resident suitor, *Blake* v. *McClung*, 172 U. S. 239, 256, taxation of shares of stock in a domestic corporation held by nonresidents on a different basis resulting in a different rate from that held by residents, *Travellers' Ins. Co.* v. *Connecticut*, 185 U. S. 364, depriving nonresident landowners of privilege of protest against local improvement accorded to resident owners, *Field* v. *Barber Asphalt Paving Co.* 194 U. S. 618, 622, all have been sustained against attack on the ground of violation of equal protection of the laws. In *District of Columbia* v. *Brooke*, 214 U. S. 138, an act of Congress was upheld which, with respect to failure to comply with an order of

the commissioners of the District of Columbia to connect lots with the public sewer or water main, applied to resident owners the coercion of criminal punishment and to non-resident owners a remedy by civil proceedings. It was said at page 150 that under the circumstances disclosed " The act in controversy makes a distinction in its provision between resident and non-resident lot owners, but this is a proper basis for classification." *Patsone* v. *Pennsylvania,* 232 U. S. 138. The case at bar is quite distinguishable from *Commonwealth* v. *Hana,* 195 Mass. 262.

The kind of business conducted by the defendant is described in the petition as follows: " 2. The business of the organization is done by issuing what are called ' 3% loan and home purchasing contracts,' each of which is one of a series, providing for the payment of monthly instalments by contract holders; the creation of a trust fund into which are paid all instalments less certain deductions, repayments of loans and interest, profits from forfeitures, etc.; and the making of loans, for the improvement of real estate, payment of incumbrances thereon, or any other purpose, to holders of contracts of the same series, from the trust fund, in the order of the date of their respective contracts, or the sale of the loan privilege for their benefit. A specimen copy of a form of one of said contracts is hereto annexed, marked ' A.' In its essence the business is in accordance with a plan by which contract holders are to pay the sums stated in their contracts on instalments and to have the privilege of securing loans in the numerical order of their contracts." The specimen copy, to which reference is made, supports and does not contradict the averments of the petition.

The case in this aspect is indistinguishable in principle from *Attorney General* v. *Pitcher,* 183 Mass. 513, and *Attorney General* v. *Preferred Mercantile Co. of Boston,* 187 Mass. 516. The differences between the general plan of doing business by the defendant and those disclosed in the two cases cited relate to immaterial matters. The word " redeemed " as used in § 7 has reference to the performance of their obligation under the contract in one case equally as in the other.

By similar phrase in each contract " this redemption of the obligations is to be in numerical order, and that is enough to bring it within the statute." 183 Mass. at page 517. The main distinction between the business scheme in the case at bar and that in *Attorney General* v. *Pitcher*, 183 Mass. 513, is that in the case at bar the contracts of the certificate holders call for loans to be made upon described property, with certain alternative options, while in the Pitcher case the contracts called for cash payments. There is no dissimilarity in law between the two.

The allegation that the defendant has a branch office in Springfield in our county of Hampden, " where it does business," is enough as matter of pleading to show continuance of violations and threatened violations of the law which may require present injunctive relief.

The result is that the order overruling the demurrer was right and is affirmed. In accordance with the terms of the report permanent injunction is to issue as prayed for.

*So ordered.*