THE HYDE COUNTY BOARD OF EDUCATION, PETITIONER v. EUGENE D.
MANN AND WIFE, BEATRICE L. MANN, AND CARROLL D. MANN AND
WIFE, GENEVA F. MANN, RESPONDENTS.

(Filed 12 June. 1959.)

**1. Appeal and Error § 41—**

Exception to exclusion of testimony will not be sustained where the
record fails to show what the witnesses would have testified had they
been permitted to answer.

**2. Schools § 6a—**

Consent judgment was entered that the site for a consolidated school
should be within ½ mile of the junction of two highways. The highway
terminating at its juncture with the other divided into two prongs be-
fore it joined the other, and it appeared that the site selected by the
board of education to the west of the junction had all but 150 feet of its
1,000 foot frontage within ½ mile radius of the west prong of the junc-
tion, and that the area to be served by the consolidated school was some
22 miles across. *Held:* The site was within the intent and purpose of the
consent judgment.

**3. Judgments § 3½—**

The courts, in construing the ambiguous language of a consent judg-
ment, under like rule for the construction of statutes and ordinances,
will consider all the facts and circumstances existing at the time of and
leading up to the execution of the judgment and the objective or ob-
jectives to be accomplished thereby.

**4. Eminent Domain § 7b—**

The Court's finding that the petitioner, prior to the institution of con-
demnation proceedings, negotiated in good faith for the purchase of the
property *held* supported by ample, competent evidence, and is conclu-
sive.

**5. Appeal and Error § 35—**

Where the charge is not in the record it will be presumed that the
jury was instructed correctly on every principle of law applicable to
the facts.

MOORE, J., not sitting.

APPEAL by respondents from *Thompson, Special Judge,* March Spe-
cial Term 1959 of HYDE.

Prior to September 1957 an action was instituted by fifty or more
citizens and taxpayers of Hyde County against the Hyde County
Board of Education, presumably to prevent the assignment of pupils
in East Hyde High School at Englehard, North Carolina to the West
Hyde High School at Swan Quarter, North Carolina, pending the
consolidation of the above schools into a single centrally located high
school.

It appears that when the above case came on for hearing at the September Special Term 1957 of the Superior Court of Hyde County, which convened on 9 September, the parties to the litigation informed the court that all matters in controversy in said action "have been fully compromised and settled in accordance with the following resolution unanimously passed by the Hyde County Board of Education at a meeting of said Board held on September 12, 1957, at which meeting all members were present, said resolution being as follows: '

"BE IT RESOLVED that the Board of Education of Hyde County proceed immediately with the building of a new Hyde County High School named Mattamuskeet High School.

"The site to be within ½ mile from the junction of the south side of the Lake Road. That the State Department of Public Instruction be requested to have the Engineer recommend a site to the Board of Education for their approval by the October Board meeting. That it is the intention of the Board of Education to spend its remaining State Funds on the building of this High School. * * *'"

The court, by consent of the parties through their counsel, on 12 September 1957, entered judgment incorporating the foregoing resolution therein and adopting the resolution as the judgment of the court, which resolution further provided for the continued operation of the East Hyde High School at Englehard until the construction of the new high school plant was completed and ready for occupancy.

Thereafter, the State Board of Education allocated for the purpose of constructing said consolidated high school $164,484.44, pursuant to the provisions of the Session Laws of North Carolina, 1953, Chapter 1046.

Before allocating said funds, the State Board of Education approved plans for said consolidated high school and approved a site consisting of 15.32 acres, the site now in controversy, which site had been selected by the Board of Education of Hyde County upon recommendation of a committee representing the State Board of Education, which committee visited Hyde County on 25 September 1957 and made its recommendation on 27 September 1957 to the Hyde County Board of Education, and, among other things, this report contains the following: "The entire area within 'one-half mile from the junction of the south side of the Lake Road' was inspected and the Mann Tract lying west of the junction and west of the Mann homestead was chosen as the most desirable. If the Hyde County Board of Education encounters difficulty in acquiring this site, the Boomer property located to the east of the junction is recommended as an alternate site."

Thereafter, the Board of Education of Hyde County acquired

title in fee simple to 3.04 acres of said site on 26 December 1957, being a part of the estate of M. S. Mann.

After the Superintendent of Public Instruction of Hyde County had tried unsucessfully to negotiate on behalf of the Board of Education of Hyde County for the purchase of 7.66 acres of land from Eugene D. Mann, which land adjoins the 3.04 acres owned by the County Board of Education on the west, and 4.62 acres of land owned by Carroll D. Mann, which adjoins the property of Eugene D. Mann on the west, this action was instituted.

Thereafter, the County Board of Education advertised for bids for the construction of the Mattamuskeet High School building to be erected on the 3.04 acre tract.

In the meantime an action was instituted by *Earl Topping v. Hyde County Board of Education, et al*, to restrain the Hyde County Board of Education, its members and the Superintendent of Public Instruction of the County, from entering into a contract for the erection of a consolidated high school building to be known as Mattamuskeet High School. The lower court refused to grant the request for a restraining order. The plaintiff appealed and when the case was heard in this Court the contract had been let and construction had been started. We held the question involved was then academic. *Topping v. Bd. of Education*, 248 N.C. 719, 104 S.E. 2d 857.

Likewise, in the meantime, the case of *Topping v. N. C. State Board of Education, et al*, had been instituted for the purpose of restraining the expenditure of the allocated funds for the construction of the Mattamuskeet High School until the entire site had been procured. That case reached this Court at the Fall Term 1958 and the opinion is reported in 249 N.C. 291, 106 S.E. 2d 502.

This condemnation proceeding came on for hearing on exceptions to the report of the commissioners who had assessed the damages and upon exception to the order of the Clerk of the Superior Court of Hyde County affirming the report of the commissioners.

In the absence of the jury, the court, upon the evidence and statements of counsel made in open court, stipulations of counsel, and upon consideration of the record in this proceeding, found certain facts.

Among the exceptions passed upon by the court below were the following: (1) The respondents except to the condemnation of their lands, alleging that all their lands condemned by petitioner in their entirety lie outside the area of "one-half mile from the junction of the south side of the Lake Road." (2) Respondents excepted to the validity of the condemnation proceeding on the ground that no ne-

gotiations were made with them in good faith to purchase the lands sought to be condemned before instituting this proceeding.

The court found as a fact that Lake Road referred to in the consent judgment is North Carolina Highway No. 94 which runs in a general north-south direction and that its southern extremity terminates at its juncture with U. S. Highway No. 264 which runs in a general east-west direction. "The juncture of the said two highways cannot be identified by one certain geographical point for that some distance prior to its termination in U. S. Highway 264 the Lake Road branches off into two prongs, the said two prongs extending onto and terminating in Highway 264, the center line of said two prongs at the terminus of same in U. S. Highway 264, being 850 feet apart. The Court finds that the purpose and intent and requirement of said judgment was that the school site to be selected by the Board of Education be within a radius of one-half mile from the juncture of said Lake Road with U. S. Highway 264 at either the western or eastern prong of said Lake Road.

"The Court further finds that all of the Eugene D. Mann land condemned by the petitioner, consisting of 7.66 acres, is within a radius of one-half mile from the juncture of the said Lake Road at its western prong with said U. S. Highway 264, and that 1.62 acres of the 4.62 acres of the Carroll D. Mann land condemned is within one-half mile of said junctures; that all the 3.04 acre tract presently owned by the Hyde County Board of Education is within one-half mile radius; so that of the 15.32 acres comprising the school site selected by the Hyde County Board of Education 12.32 acres of same is situate within the one-half mile radius from the juncture of the western prong of the Lake Road and Highway 264, which the Court finds and holds to be in compliance with the terms of said judgment at the September 1957 Term.

"That prior to the institution of this proceeding for the condemnation of the land described in the petition, the petitioners through their duly authorized secretary and agent negotiated in good faith with each of the respondents for the purchase of the land belonging to the respondent Eugene D. Mann and the land belonging to the respondent Carroll D. Mann, and the petitioner was unable through negotiations so conducted to purchase and acquire title to the same.

"That no evidence was introduced with respect to respondents' third exception, which challenges the action of the Commissioners upon the alleged ground that it was arbitrary, capricious and not made in good faith, and the Court finds upon the record that the Commissioners complied with the provisions of the statutes, and

finds as a fact that the petitioner acted in good faith and without abusing its discretion as to the selection of the site or in the proceedings had to acquire the land."

The court further found that the sole issue to be determined upon this appeal is the amount of compensation and damages which each respondent is entitled to recover. The following issues were submitted to the jury and answered as indicated.

"What amount of damages is the respondent, Eugene D. Mann, entitled to recover of the petitioner by reason of the taking of the 7.66 acre tract and resultant damages, if any, to the remaining portion of the 65 acre tract owned by the respondent Eugene D. Mann? Answer: $9,778.30.

"What amount of damages is the respondent, Carroll D. Mann, entitled to recover of the petitioner by reason of the taking of the 4.62 acre tract and resultant damages, if any, to the remaining portion of the 65 acre tract owned by the respondent Carroll D. Mann: Answer: $3,576.13."

Judgment was entered on the verdict and the respondents appeal, assigning error.

*O. L. Williams, White & Aycock for petitioner.*
*Bryan Grimes, LeRoy Scott, Wilkinson & Ward for respondents.*

DENNY, J.   The respondents' first three exceptions brought forward as assignments of error Nos. 1, 2 and 3, relate to the court having sustained the objections of the petitioner to certain questions propounded by the respondents' attorneys to the respondents. These exceptions are without merit for the reason that the respondents failed to insert in the record what the response of the respective respondents would have been had they been permitted to answer. *Highway Comm. v. Privett,* 246 N.C. 501, 99 S.E. 2d 61; *Hatcher v. Clayton,* 242 N.C. 450, 88 S.E. 2d 104; *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 745; *S. v. Poolos,* 241 N.C. 382, 85 S.E. 2d 342.

Assignment of error No. 4 is directed to the court's finding of fact to the effect " * * * that the purpose and intent and requirement of said judgment was that the school site to be selected by the Board of Education be within a radius of one-half mile from the juncture of said Lake Road with U. S. Highway 264 at either the western or eastern prong of said Lake Road."

In our opinion, based on the evidence with respect to the juncture of Highway 94 with Highway 264 by an eastern and western prong, and the further evidence showing that 12.32 acres of the site selected

for the location of the consolidated high school is within one-half mile of the western prong of the juncture with Highway 264, the court was correct in its interpretation of the consent judgment with respect to the location of the site, and the finding of fact and the conclusion of law with respect thereto will be upheld.

Moreover, where the language of a statute, ordinance, or judgment, is ambiguous, the courts will take into consideration all the facts and circumstances existing at the time of and leading up to the enactment of the statute, the ordinance, or the entry of judgment, and in the interpretation of such statute, ordinance, or judgment, the courts will take into consideration the objective or objectives to be accomplished thereby. 82 C.J.S., Statutes, section 352, page 739, et seq.; 49 C.J.S., Judgments, section 436, page 862, et seq.

What do we have as a basis for the validity of this assignment of error? We have a site selected in good faith by the proper authorities, as provided by law and in compliance with the compromise agreed upon in the consent judgment, except it has been determined after some two years of litigation and after the contract for the construction of the consolidated high school has been let and construction partially completed that three acres of the 15.32 acre site is not within a one-half mile radius of the western prong of Highway 94 where it enters Highway 264.

This proposed centrally located high school is to serve the areas heretofore served by East Hyde High School at Englehard and West Hyde High School at Swan Quarter; the combined area to be served is more than 22 miles across from east to west.

A map prepared on 16 February 1959 by Meriwether Lewis, a registered surveyor, was used by him as a witness for the petitioner to illustrate his testimony. According to said map, the portions of the respondents' lands condemned in this proceeding, together with the 3.04 acre tract owned in fee simple by the Hyde County Board of Education, have a combined frontage on the south side of Highway 264 of 1,000 feet; that all of this frontage except 150 feet of the condemned land of Carroll D. Mann lies within one-half mile of the juncture of the western prong of Highway 94 and Highway 264. In light of the objective to be accomplished by the construction of a consolidated high school to serve the area contemplated, no useful or beneficial purpose could possibly be served by shifting this site 150 feet or even 1,000 feet eastward so that it would be within one-half mile of where the eastern prong of Highway 94 enters Highway 264.

It appears in the consent judgment entered on 12 September 1957,

which was made a part of the record in a former appeal involving this controversy, that East Hyde High School at Englehard at that time had only 74 pupils enrolled. The records in this litigation further reveal that the Mattamuskeet High School building when completed will contain only six classrooms. Therefore, the consolidated school in all probability will have fewer than 200 pupils enrolled therein. Moreover, practically all, if not all, of these pupils will be transported in school busses operated and maintained by the County. It cannot be said in good faith that it is unfair or unjust for the pupils residing in the eastern portion of the area to be served to be required to ride 150 feet farther west on a school bus than they would be required to do if the site were moved eastwardly to that extent so that the entire site would be within a radius of one-half mile from the juncture with Lake Road. Such a contention would be indefensible.

In the case of *Ralls v. Parrish,* 105 Tex. 253, 147 S.W. 564, it was provided by statute that no county seat situate within five miles of the geographical center of a county was to be removed except by a two-thirds vote of the electors of the county voting thereon. An election was held to determine whether the county seat of Crosby County would remain at Emma or be removed to Crosbyton. The election returns showed that 199 votes were cast for Crosbyton as the county seat, while 120 voted for Emma being continued as the county seat. All of Crosbyton was within five miles of the geographical center of the county, while all of Emma was not within five miles of said geographical center. Therefore, it was contended that since all of the town of Emma was not within five miles of the geographical center of the county, a two-thirds vote in favor of the removal of the county seat to Crosbyton was not necessary. The Supreme Court of Texas said: "If any portion of the town of Emma as that town was known and recognized at the time the proposed change of the county seat was ordered to be voted upon and as the voters intended it should constitute the county seat, * * * is located within a radius of five miles of the geographical center of Crosby County, then the town of Emma in contemplation of article 811, Sayles' Civil Statutes, is within such radius. *Bradford v. Robison,* 141 S.W. 769. Differently stated, it is not necessary that a county seat should be wholly within the radius of five miles of the geographical center of the county, but only partially so, in order to make applicable the two-thirds rule in removing such county seat."

This assignment of error is feckless and is therefore overruled.

The respondents' fifth assignment of error is based on their excep-

tion to the court's finding that prior to the institution of this proceeding for the condemnation of land described in the petition, the petitioner through its duly authorized agent negotiated in good faith as hereinabove set out in the statement of facts.

The court's finding of fact in this respect is supported by ample and competent evidence and no useful purpose would be served by its inclusion herein. Therefore, this assignment of error is likewise without merit and is overruled.

The charge of the trial court was not included in the record on appeal. Consequently, it is presumed that the jury was instructed correctly on every principle of law applicable to the facts. *Hatcher v. Clayton, supra.*

We have carefully examined all the exceptions and assignments of error, and no prejudicial error has been shown.

The findings of fact, the conclusions of law, the verdict and the judgment of the court below, will be upheld.

No Error.

MOORE, J., not sitting.