IN THE MATTER OF THE ESTATE OF PAUL PERRY. DECEASED, ROLAND PERRY, ADMINISTRATOR.

(Filed 13 December, 1961.)

### 1. Husband and Wife § 15—

The wife has no claim on rents and profits from an estate by the entireties which had accrued at time of the husband's death. G.S. 28-10, G.S. 30-4, G.S. 52-19.

### 2. Same; Husband and Wife § 17; Descent and Distribution § 6; Action § 5—

Where the wife feloniously slays her husband, equity will decree that she hold the rents and profits from lands theretofore held by them by the entireties as a constructive trustee for the benefit of the husband's distributees. at least during the full term of the husband's life expectancy, in accordance with the equitable principle that a person will not be permitted to benefit from his own wrong.

APPEAL by Lorraine Perry, petitioner, from an order signed February 27, 1961, by *McKinnon, Judge* holding the courts of the Eleventh Judicial District. From LEE.

A final account filed July 29, 1960, by Roland Perry, administrator of the estate of Paul Perry, deceased, showed a balance for distribution of $1,091.53, which was paid by the administrator to the Clerk of the Superior Court of Lee County pursuant to G.S. 28-160 and G.S. 28-161.

Lorraine Perry, the widow of Paul Perry, by petition filed with said clerk, asserted her ownership and demanded payment of said $1,091.53. An answer to said petition was filed in behalf of Sylvia K. Perry by her general guardian, the North Carolina National Bank, asserting her ownership and demanding payment of said $1,091.53. Sylvia K. Perry, a minor, is the only child of Paul Perry.

From an order of the clerk adjudging the petitioner entitled to said $1,091.53, the respondent excepted and appealed to the judge of the superior court; and, by consent, the said appeal was heard by Judge McKinnon and the order was signed in Lillington, North Carolina.

Judge McKinnon, based "(o)n the record, pleadings and stipulations," made findings of fact, conclusions of law and entered judgment as follows:

"1. That Paul Perry and Lorraine Perry were husband and wife and Sylvia K. Perry, minor, is the only living issue of their union;

"2. That at the time of the death of Paul Perry, the said Paul Perry and wife, Lorraine Perry, owned certain real estate in East Sanford Township, Lee County, North Carolina, upon which was located a dwelling house, by the entireties;

"3. That Lorraine Perry did willfully and feloniously kill and murder Paul Perry, her husband, who died intestate, and did plead guilty to said crime at the October-November Term of Lee Superior Court, 1956;

"4. That Roland Perry qualified and acted as the Administrator and with his final account paid into the Office of the Clerk of Superior Court of Lee County, $1,091.53, which is the entire net rental of the lands described in paragraph 2 above, and Lorraine Perry waived any claim for rentals in excess of said sum;

"5. That at the time of his death, Paul Perry was 33 years of age and had a life expectancy of 37.69 years and Lorraine Perry was 32 years of age and had a life expectancy of 38.59 years.

## "CONCLUSIONS OF LAW

"(1) That Paul Perry during his lifetime was entitled to the rents and profits from the lands described in paragraph 2 above;

"(2) That Lorraine Perry is not entitled to the rents and profits of said lands, for to allow her same would let her benefit from her own wrong;

"(3) Sylvia K. Perry, Minor, the daughter of Paul Perry and Lorraine Perry, and Paul Perry's sole heir at law, is entitled to the sum of $1,091.53, in the hands of the Clerk of Superior Court of Lee County.

"NOW, THEREFORE, IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED that the sum of $1,091.53, in the hands of the Clerk of Superior Court of Lee County be disbursed to North Carolina National Bank, General Guardian for Sylvia K. Perry."

Lorraine Perry, the petitioner, excepted to said conclusions of law and to said judgment and appealed.

*Pittman, Staton & Betts for petitioner, appellant.*
*Hoyle & Hoyle for respondent, appellee.*

BOBBITT, J. The order from which petitioner appeals relates directly and solely to the $1,091.53 now held by the clerk. This is the (net) amount of the rents collected by the administrator from real estate owned by Paul Perry and wife, Lorraine Perry, as tenants by the entirety, at the death of Paul Perry, intestate, on July 15, 1956.

Lorraine Perry, the petitioner, wilfully and feloniously killed and murdered Paul Perry, her husband; and, at the October-November Term, 1956, of Lee Superior Court, she entered a plea of guilty of murder in the second degree.

Rents from said estate, accrued but unpaid at the death of Paul Perry, constituted a part of his personal estate. Clearly, under express statutory provisions and on equitable principles, Lorraine Perry has no interest in such accrued rents. G.S. 28-10; G.S. 30-4; G.S. 52-19; *Garner v. Phillips,* 229 N.C. 160, 47 S.E. 2d 845.

It may be implied, although not expressly stated, that the $1,091.53 was derived wholly from rents accruing subsequent to the death of Paul Perry. We shall assume this to be true.

Incidents of an estate by the entirety include the following: (1) "Upon the death of one, either the husband or the wife, the whole estate belongs to the other by right of purchase under the original grant or devise and by virtue of survivorship—and not otherwise—because he or she was seized of the whole from the beginning, and the one who died had no estate which was descendible or devisable." *Davis v. Bass,* 188 N.C. 200, 204, 124 S.E. 566. (2) ". . . the husband is en-

titled during the coverture to the full possession, control and use of the estate, and to the rents and profits arising therefrom to the exclusion of the wife." *Nesbitt v. Fairview Farms, Inc.,* 239 N.C. 481, 486, 80 S.E. 2d 472.

Decisions in other jurisdictions are cited and discussed in the Annotation, "Felonious killing of one cotenant or tenant by the entireties by the other as affecting latter's rights in the property," 32 A.L.R. 2d 1099, which supersedes the Annotations in 51 A.L.R. 1106 and 98 A.L.R. 773.

As stated by *Devin, J.* (later *C.J.*), in *Garner v. Phillips, supra:* "It is a basic principle of law and equity that no man shall be permitted to take advantage of his own wrong, or acquire property as the result of his own crime."

This Court has not directly passed upon the legal consequences to an estate by the entirety where the wife murders the husband. In *Bryant v. Bryant,* 193 N.C. 372, 137 S.E. 188, 51 A.L.R. 1100, the husband murdered the wife. Since both petitioner and respondent cite and rely thereon, full consideration of the factual situation and of the decision therein is appropriate.

In *Bryant,* the plaintiffs were the children of Ida Bryant, the deceased wife, and of Wash Bryant, her husband-murderer. Ida Bryant, at the time of her death, was in good health; and, under the mortuary table, had a longer expectancy of life. In the superior court, it was adjudged that the defendant (husband-murderer) held the legal title in trust for the plaintiffs; that the plaintiffs were the equitable owners and entitled to the actual possession thereof, "freed and discharged from the claims of the defendant," and that the defendant account to the plaintiffs for the rents and profits received by him. It was adjudged that defendant convey the land to plaintiffs and, upon his failure to do so, the judgment should operate as such conveyance. Upon the defendant's appeal, the said judgment was *modified* and affirmed.

The equitable doctrine on which this Court based decision was stated by *Adams, J.,* as follows: "As a question of common law the homicide does not prevent the legal title from passing to the criminal as the heir or devisee of his victim, but equity, acting *in personam,* compels the wrongdoer who has acquired the *res,* to hold it as a constructive trustee of the person wronged, or of his representatives, if he be dead; and this result follows although the homicide may not have been committed for the express purpose of acquiring title, if by reason of the homicide the title would have passed to the criminal under the common law." This equitable doctrine is succinctly stated in Restatement of the Law, Restitution § 188, as follows: "Where two persons have an interest in property and the interest of one of them

is enlarged by his murder of the other, to the extent to which it is enlarged he holds it upon a constructive trust for the estate of the other."

Applying this equitable doctrine, it was held the defendant, by his crime, could not take away his wife's contingent right to the whole estate upon surviving him. Hence, the defendant was held "a constructive trustee for the benefit of her heirs, the judge in effect having found as a fact that the deceased would have survived him." Immediately following, *Adams, J.,* adds this *dictum:* "Even in the absence of such finding, equity would probably give the victim's representatives the benefit of the doubt."

Pertinent to said *dictum, Adams, J.,* cites Ames, Lectures on Legal History, 321, where the author, in respect of joint tenancies, states: ". . . it being impossible to know which of the two would have outlived the other, equity would doubtless give the innocent victim the benefit of the doubt, as against the wrongdoer *who had deprived him of his chance of survivorship,* . . ." (Our italics) In the Restatement, Restitution § 188, Comment a, it is stated: "Thus, if the murderer had an interest in property contingent upon his surviving his victim, he is not entitled to keep the property, since although he survives the victim he does so as a result of the murder, and but for the murder he might have predeceased the victim, in which case he would not have been entitled to the property. It is immaterial that because of their respective ages, state of health or the like, it is probable that the murderer would have been the survivor." In this connection, see *Colton v. Wade* (Del.), 80 A. 2d 923.

In *Bryant,* it was held the defendant, by his crime, did not forfeit or impair *his own vested right* to the possession, control and use of the property and to the rents and profits therefrom. The decision is stated as follows: "Our conclusion is that the appellant holds *the interest of his deceased wife* in the property as a trustee for her heirs at law; that he should be perpetually enjoined from conveying the property in fee; that the plaintiffs should be adjudged the sole owners, *upon the appellant's death,* of the entire property as the heirs of their deceased mother; and that the judgment as thus modified should be affirmed." (Our italics)

Here the wife murdered her husband. During their joint lives, she had no right to the possession, control and use of the estate, and no interest in the rents and profits therefrom. She could not, by her crime, take away her husband's vested rights or acquire such rights. In respect thereof, she is a constructive trustee for Sylvia K. Perry, who is the equitable owner thereof. For present purposes, it is sufficient to

say that this status continues *at least* during the full term of Paul Perry's life expectancy.

Petitioner contends she is entitled to at least one-half of the rents and profits during her lifetime. She contends the husband's right to the rents and profits from an estate by the entirety during the joint lives of husband and wife is in recognition of his obligation to support his wife. True, "the rents and profits therefrom, which belong to the husband, may be charged with the support of his wife." *Porter v. Bank,* 251 N.C. 573, 577, 111 S.E. 2d 904. But in this respect, such rents and profits have the same status as other income and assets owned exclusively by the husband. It would be strange indeed if a wife who murders her husband could assert rights on the ground she thereby relieved him of his obligation to support her.

In the Annotation, "Married Women's Act as abolishing estates by entireties," 141 A.L.R. 179, 202, it is stated: "In a majority of jurisdictions the view is adopted that Married Women's Acts have destroyed the husband's exclusive right to the control, possession, and usufruct of the estate." However, in North Carolina and other jurisdictions, this view was *not* adopted. As stated by *Stacy, J.* (later *C.J.*), in *Davis v. Bass, supra:* "The husband was considered the owner of such rents and profits at common law, and none of the properties and incidents of this particular estate have been changed or altered in their nature and character by statute or by constitutional provision in North Carolina. It will be observed that Art. X, sec. 6 of the Constitution deals with the 'sole and separate property' of married women; and the Martin Act of 1911 (C.S., 2507) has been construed as not affecting estates held by husband and wife as tenants by the entirety. *Jones v. Smith,* 149 N.C. 317."

In a comprehensive article, "Tenancy by Entireties," by Oval A. Phipps, appearing in 25 Temple Law Quarterly 24, the author attaches a table indicating the present attributes of an estate by the entirety in the several states. In states where the wife and husband, during their joint lives, are equally entitled to the possession, control and use of the property, and to the rents and profits therefrom, it would seem, upon application of the equitable principles stated in *Bryant,* that the wife, notwithstanding she murdered her husband, would *retain* a vested interest to the extent of one-half of such rents and profits. But, as stated in the cited article, "In Massachusetts, Michigan and North Carolina, the husband, and only he, is vested with exclusive rights to the possession, management, and control of usufruct and profits during the marriage, but he may do nothing without the wife's joinder to defeat the survivorship right of the wife."

Attention is called to Chapter 210, Session Laws of 1961, which

adds to the General Statutes a new chapter, designated Chapter 31A, entitled "Acts Barring Property Rights." It appears this statute is based largely on an article, "Acquisition of Property by Wilfully Killing Another—A Statutory Solution," by John W. Wade, appearing in 49 Harvard Law Review 715 *et seq.* Suffice to say, this 1961 Act has no bearing on the present case. Decision here is based on the North Carolina law with reference to an estate by the entirety and upon the equitable principles declared and underlying the decision in *Bryant.*

For the reasons stated, the judgment of Judge McKinnon is affirmed.

Affirmed.