NORTH CAROLINA BOARD OF ARCHITECTURE v. C. A. LEE.

(Filed 18 June, 1965.)

**1. Architecture—**

   The N. C. Board of Architecture has statutory authority to institute suit to restrain a person from practicing architecture in violation of the provisions of G.S. 83-12.

BOARD OF ARCHITECTURE *v.* LEE.

**2. Appeal and Error § 23—**

Exclusion of evidence cannot be held prejudicial when the record fails to show what the answer of the witness would have been had he been permitted to reply.

**3. Architecture—**

The N. C. Board of Architecture is not required to warn a person of violating G.S. 83-12 before instituting action against such person.

**4. Appeal and Error § 21—**

An exception to the judgment does not present for review the evidence upon which the findings of the court are based, but does present the question whether error or law appears on the face of the record proper, including whether the facts found are sufficient to support the judgment and whether the judgment is regular in form.

**5. Appeal and Error § 38—**

A theory of liability alleged in the complaint, but not pursued upon the trial and in support of which no argument is advanced in the brief, will be deemed abandoned.

**6. Husband and Wife § 15—**

In a tenancy by the entirety both the husband and wife own the entire estate, but the husband has the absolute and exclusive right to control, use, and receive the income from the lands, and does not have to account to his wife therefor.

**7. Architecture—**

Where a person at the time of drawing plans for the construction of a building has title to some of the component tracts in himself and title to some in himself and his wife as tenants by the entireties, he comes within the meaning of the exception contained in G.S. 83-12, and does not violate the law in drawing such plans, even though he is not a licensed architect, and this result is not affected by the fact that prior to the completion of the construction of the building he sells an interest therein to another.

**8. Same—**

The fact that a building is constructed for the purpose of leasing it for commercial uses does not preclude the owner of the land from drawing the plans for such building even though he is not a licensed architect, since the exemption of G.S. 83-12 is broad and comprehensive and is not limited.

**9. Statutes § 5—**

Where the language of a statute is clear and unambiguous the courts must declare such meaning and are without power to interpolate or superimpose provisions and limitations not contained therein.

**10. Architecture—**

A trustee holding title to land in common with other trustees of a church does not come within the exception of G.S. 83-12, and is liable to prosecution if he, not being an architect, draws plans for the construction of a building on the church property.

11. **Same; Equity § 2—**

Where the N. C. Board of Architecture waits for some nine years before instituting action against defendant for defendant's violation of G.S. 83-12 in drawing plans for the construction of a building costing in excess of twenty thousand dollars, such action is correctly dismissed for laches, since courts of equity discourage delay in the enforcement of rights.

12. **Appeal and Error § 49—**

Where a legal conclusion of the trial court is not supported by its findings of fact, the judgment must be modified by eliminating such conclusion.

HIGGINS, J., concurring.

RODMAN, J., concurs in concurring opinion.

APPEAL by plaintiff from *Copeland, S.J.*, December 1964 Assigned Civil Session of WAKE.

Civil action instituted by the North Carolina Board of Architecture (prior to the 1957 amendment, Chapter 794, 1957 Session Laws, the Board was designated "State Board of Architectural Examination and Registration"), under the authority of G.S. 150-31, for a permanent injunction to restrain the defendant, C. A. Lee, "from making plans or specifications either personally or as the head of an office or organization for any religious, industrial, commercial, or residential building or any other type of structure or building of a value exceeding $20,000, when, regardless of ownership, such building is designed and constructed for others or to be sold or leased in whole or in part, or is designed or intended for the occupancy or use of others; or to otherwise practice architecture as defined in G.S. 83-1(3), except for plans for the construction of residential, farm or commercial buildings of a value not exceeding $20,000; or until and unless he shall have secured from the North Carolina Board of Architecture his certificate of admission to practice architecture, and thereafter complies with the provisions and laws of North Carolina governing the registration and licensing of architects."

Defendant filed an answer in which, while admitting that he is not an architect, that he does not hold himself out to the public as being an architect, and that he has not been engaged in the practice of architecture as defined in G.S. 83-1(3), he denies that he violated any of the provisions of Chapter 83 of the General Statutes as alleged in the complaint, on the ground that he was an individual "making plans or data for buildings for himself" within the meaning of the exception in G.S. 83-12 as now constituted, which reads: "Nothing in this chapter shall be construed to prevent any individual from making plans or data for buildings for himself." Prior to 1957, and all during the year 1955, the

exception in G.S. 83-12 read as follows: "Nothing in this Act shall be construed to prevent any person from making plans or data for buildings for himself." The General Assembly in Chapter 794, 1957 Session Laws, substituted "individual" for "person" in the part of the statute above quoted.

At the December 1964 Assigned Civil Session of Wake County superior court, plaintiff applied for a temporary restraining order by Judge Copeland. When it came on to be heard, the parties stipulated "that this hearing shall be considered a final hearing on the merits of the case and that the judgment shall be a final judgment in the cause subject only to the right of either party to appeal from the judgment," and further stipulated "that defendant is not a registered architect licensed by the Board of Architecture in the State of North Carolina, and has never been licensed." Only the plaintiff offered evidence. Among its witnesses, plaintiff called the defendant C. A. Lee. Based upon the evidence offered by the plaintiff, the court made the following FINDINGS OF FACT:

"1. The defendant is a citizen and resident of Winston-Salem, Forsyth County, North Carolina, is 59 years of age, and has been engaged in the general construction business for a period of over 30 years.

"2. The defendant is not licensed under the laws of North Carolina to practice architecture and he has never applied for nor taken any examination with the N. C. Board of Architecture and he has not been licensed or certified by said Board as eligible to practice architecture in this State and he is not a licensed 'registered engineer' within the laws of North Carolina.

"3. During the year 1955, the defendant applied to and received from the City of Winston-Salem a building permit for the construction of an educational building costing approximately $175,000 for Salem Baptist Church in Winston-Salem; that on the plans submitted for the building there appeared the notation: 'Plans by C. A. Lee.' The defendant prepared or assisted in the preparation of the plans for the building and then supervised the construction of the building for the church. The building was constructed by day labor and many of the laborers were members of the church. At all times during 1955, the defendant was a member of Salem Baptist Church and a Trustee of the church; that the title of the land on which the educational building was constructed was held by the five trustees of the church, including the defendant; that the defendant being a Trustee executed the mortgage to finance the construction of the building. The defendant prepared

the plans for the building as a Trustee and owner and made no charges therefor; that the defendant did receive a weekly salary for his services in overseeing the construction work.

"4.  The next application to the City of Winston-Salem made by the defendant for a building permit was on April 9, 1963. The application was for a permit for the construction of a $45,000.00 addition to Deeds Hall for Piedmont Bible College and the plans submitted were certified under seal of a duly licensed architect.

"5.  On March 9, 1964, the defendant applied to and received from the City of Winston-Salem a building permit for the construction of an automobile sales and service building on land owned by the defendant costing approximately $65,000.00; that the defendant had bought the property in several tracts acquired at different times over a period of years and some of the tracts were deeded to the defendant and some were deeded to the defendant and his wife as tenants by the entirety; that the application for the permit indicated that the owners were 'E. L. Connor and C. A. Lee'; that prior to and at the time the permit was issued the lands on which the building was constructed was actually owned by the defendant or by the defendant and wife by the entirety; that the defendant designated on the application E. L. Connor as an owner because Connor was a brother-in-law of the defendant, and the defendant had been trying to persuade Connor to go in with him in the construction of the building; that Connor could not make up his mind and would not commit himself and the defendant proceeded individually to commence to build the building for himself; that the defendant completed the preparation of the plans for the building December 27, 1963, and revised them on March 9, 1964; that the defendant prepared his own plans for the building constructed on land owned by him in Winston-Salem, and the building was designed and constructed in conformity with the building codes of the City of Winston-Salem and the State of North Carolina. On or about March 31, 1964, the defendant's brother-in-law, E. L. Connor, decided to go in with the defendant on the building. Connor owned a smaller tract adjoining the defendant's tract on which the building was being constructed. On March 31, 1964, Connor and his wife (the defendant's sister) and defendant and his wife executed a deed conveying both tracts to one Barbara Ann Adams (a straw person) who then executed a deed conveying both tracts to the defendant and his wife and Connor and his wife. Prior to these conveyances, the defendant owned about 90 to 95% of the entire land and Connor's interest

was approximately 5%. The building was later leased by the owners to an automobile agency.

"6. The defendant has no applications for building permits pending and no evidence was introduced tending to show that the defendant was preparing any plans for any buildings at this time."

Based upon his findings of fact, Judge Copeland made the following CONCLUSIONS OF LAW:

"1. Since the defendant was a member of the church and a trustee when he assisted in the preparation of plans for a church building he stood in the position of owner and had both a legal and an equitable interest in the building to be constructed.

"2. When defendant prepared plans for an automotive sales and service building, he was preparing his own plans for a building on land owned by himself.

"Under the evidence presented the Court concludes that the plaintiff has failed to establish that the defendant has violated any provisions of the statutes relating to the practice of architecture.

"Under the law and facts of this case, the Court concludes that the plaintiff is not entitled to any of the relief sued for and plaintiff's application for an injunction should be denied, and this action should be dismissed."

Based upon his findings of fact and his conclusions of law, Judge Copeland entered judgment adjudging and decreeing that the application of plaintiff for an injunction against the defendant be denied, that the action be dismissed, and that plaintiff be taxed with the costs. From this judgment, plaintiff appealed to the Supreme Court.

*Arendell, Albright, Reynolds & Farmer by R. Mayne Albright for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by I. E. Carlyle and Charles F. Vance, Jr., for defendant appellee.*

PARKER, J. Plaintiff was empowered by the specific provisions of G.S. 150-9 and 150-31 to institute this suit in the Wake County superior court for a permanent injunction to restrain defendant from allegedly practicing architecture in violation of the provisions of G.S. 83-1(3) and 83-12.

Chapter 83 of the General Statutes is entitled "Architects." G.S. 83-1(3) defines "The practice of architecture." G.S. 83-12 provides in relevant part: "In order to safeguard life, health and property, it shall be unlawful for any person to practice architecture in this State as defined in this chapter, except as hereinafter set forth, * * * unless such person shall have secured from the Board a certificate of admission to practice architecture in the manner herein provided, and shall thereafter comply with the provisions of the laws of North Carolina governing the registration and licensing of architects." G.S. 83-12 contains this express exception: "Nothing in this chapter shall be construed to prevent any individual from making plans or data for buildings for himself, * * *; provided that such persons preparing plans and specifications for buildings of any kind shall identify such plans and specifications by placing thereon the name and address of the author." G.S. 83-12 further provides that anyone unlawfully violating the provisions of Chapter 83 of the General Statutes shall be guilty of a misdemeanor, and shall upon conviction be sentenced to pay a fine or imprisonment, or both, "each day of such unlawful practice to constitute a distinct and separate offense."

Plaintiff's first assignment of error is that the court erred in sustaining defendant's objection to the following question it asked its witness, Louis Polier, its executive secretary: "Do you recall that any warning was issued to Mr. Lee about unauthorized practice in connection with the educational building for Salem Baptist Church?" In sustaining the objection the court stated: "What difference does it make?" Counsel for defendant in replying stated in part: "The Board is not required to give warnings." This assignment of error is overruled on two grounds: First, because plaintiff failed to insert in the record what the answer of Polier would have been had he been permitted to respond, *Board of Education v. Mann,* 250 N.C. 493, 109 S.E. 2d 175; and second, because plaintiff concedes in his brief "that the showing of warnings is not required in order to warrant an injunction, a single act of unauthorized practice being sufficient, if shown, to invoke the criminal penalties of G.S. 83-12 or the injunctive relief of G.S. 150-31."

Plaintiff's second and last assignment of error is: "The court erred in rendering and signing the judgment as set forth herein." This assignment of error does not bring up for review the evidence upon which the findings of fact are based. It does, however, raise the question as to whether an error of law appears on the face of the record proper. This includes the question whether the facts found by the judge are sufficient to support the judgment, and whether the judgment is regular in form. *Insurance Co. v. Trucking Co.,* 256 N.C. 721, 125 S.E. 2d 25.

Judge Copeland's findings of fact relate to defendant's activities in respect to three buildings: (1) The construction in 1955 of an educational building for Salem Baptist Church in Winston-Salem; (2) the construction in 1963 of an addition to Deeds Hall for Piedmont Bible College; and (3) the construction in 1964 of an automobile sales and service building.

Judge Copeland's finding of fact in respect to the second building is that on 9 April 1963 defendant applied to the city of Winston-Salem for a building permit to construct a $45,000 addition to Deeds Hall for Piedmont Bible College, and the plans submitted were certified under seal of a duly licensed architect. Nothing in this finding of fact shows that defendant was engaged in the practice of architecture in violation of the provisions of Chapter 83 of the General Statutes. It appears that plaintiff has abandoned its allegation in its complaint and its contention that defendant violated the provisions of Chapter 83 of the General Statutes in respect to the construction of an addition to Deeds Hall for Piedmont Bible College, because upon the facts found by Judge Copeland it makes no contention in its brief that in doing this work defendant violated the provisions of Chapter 83 of the General Statutes. Further, plaintiff on the last page of its brief states: "Plaintiff contends that BOTH the church plans and the garage plans were violations, but that EITHER is sufficient to warrant an injunction against further violations by defendant." Judge Copeland was correct in his conclusion of law that in respect to the construction of this addition to Deeds Hall for Piedmont Bible College defendant was not engaged in the practice of architecture in violation of the provisions of Chapter 83 of the General Statutes.

Judge Copeland's findings of fact in respect to the third building are to this effect: On 9 March 1964 defendant applied to and received from the city of Winston-Salem a building permit for the construction of an automobile sales and service building on land which he had bought in several tracts over a period of years, and that titles to some of these tracts composing this land were conveyed to him by deed and some to him and his wife as tenants by the entirety. That the application for the building permit indicated that the owners were E. L. Connor and C. A. Lee, though in fact prior to, and at the time the building permit was issued, the land on which the building was constructed was actually owned by defendant or by defendant and his wife as tenants by the entirety. Defendant had completed his own plans for this building on 27 December 1963, and revised them on 9 March 1964. After receiving a building permit, defendant commenced to construct the building for himself. E. L. Connor, defendant's brother-in-law, owned a smaller tract of land adjoining defendant's land on which the building was be-

ing constructed. On 31 March 1964 Connor decided to go in with defendant on this building, and on that day Connor and his wife and defendant and his wife executed deeds conveying their respective lands to Barbara Ann Adams, and she then executed a deed conveying both tracts of land to defendant and his wife and Connor and his wife. Prior to the conveyances to Adams, defendant, and defendant and his wife as tenants by the entirety, owned about 90% to 95% of the entire land and Connor about 5%. The building was later leased by the owners to an automobile agency.

Tenancy by the entirety was recognized by the common law, at least as far back as the reign of Edward III, when husband and wife were regarded as one person, and that person was the husband, "and a conveyance to them by name was a conveyance in law to but one person." *Davis v. Bass,* 188 N.C. 200, 124 S.E. 566; *Motley v. Whitemore,* 19 N.C. 537; Lee, North Carolina Family Law, 3d Ed., Vol. 2, p. 55.

In tenancy by the entirety, "the husband and wife take the whole estate as one person. Each has the whole; neither has a separate estate or interest; but the survivor of the marriage whether husband or wife is entitled to the entire estate * * *." *Bank v. Hall,* 201 N.C. 787, 161 S.E. 484.

During the existence of the tenancy by the entirety, the husband has the absolute and exclusive right to the control, use, possession, rents, income and profits of the lands, and he does not have to account to his wife for the rents and income received from the property. *Porter v. Bank,* 251 N.C. 573, 111 S.E. 2d 904; *Davis v. Bass, supra;* Lee, North Carolina Family Law, 3d Ed., Vol. 2, § 115, where many cases are cited.

The estate by the entirety and the properties and incidents of this particular estate have not been changed or altered in their nature and character by statute or by constitutional provisions in North Carolina. *In re Estate of Perry,* 256 N.C. 65, 123 S.E. 2d 99; *Davis v. Bass, supra.*

Taking into consideration that during the existence of the tenancy by the entirety the husband has the absolute and exclusive right to the control, use, possession, rents, income, and profits of the lands held by him and his wife as tenants by the entirety, when defendant made plans for the construction of an automobile sales and service building upon lands composed of several tracts, title to some of the component tracts being in him, and some in him and his wife as tenants by the entirety, it seems clear that he was making plans for a building for himself within the meaning of the specific exception contained in G.S. 83-12, and that this is true even though before the building was completed Connor and his wife acquired an interest in it, for the express statutory exception contains no provision preventing him from

selling an interest in the building for which he made the plans. Plaintiff contends that making plans for the construction of a building for lease, as was the case here, or for use by the public, is not within the statutory exception of "buildings for himself." This contention is untenable, for there is nothing in the express exception in G.S. 83-12 to justify such a contention. The words "buildings for himself" contained in the express statutory exception are broad and comprehensive, *S. v. Cuthrell,* 235 N.C. 173, 69 S.E. 2d 233; 12 C.J.S., Building, pp. 380-81, and contain no limitation of any kind. Our statutory exemption differs from that of the State of New Jersey. The New Jersey Statutes Annotated, § 45:3-10, prohibits the illegal practice of architecture, and has an express exception as follows: "Nothing herein contained shall * * * prohibit any person in this State from acting as designer of any building that is to be constructed by himself for his own occupancy or occupancy by a member or members of his immediate family * * *." So far as we can determine from the briefs of counsel and from our own research, no other state has a statutory exception similar to ours. Obviously, a building may be erected for any one or more of many purposes. It seems plain that the statutory exception contemplates possession by the designer of the building for whatever lawful purpose he may choose. If the General Assembly had intended the statutory exception to be limited to buildings actually occupied by the designer, and not for lease and use by the public, it could quite easily have said so. The General Assembly in its wisdom and discretion did not so limit the statutory exception. The General Assembly having thus formally and clearly expressed its will, the Court is without power to interpolate or superimpose conditions and limitations which the statutory exception does not of itself contain. Judge Copeland was correct in his conclusion of law that defendant in making plans for the construction of this automobile sales and service building was not engaged in the practice of architecture in violation of the provisions of Chapter 83 of the General Statutes.

In respect to the first building, Judge Copeland's findings of fact show that defendant in the year 1955 "prepared or assisted in the preparation of the plans" for the construction of an educational building for Salem Baptist Church in Winston-Salem; that on the plans submitted to the city of Winston-Salem appeared the notation: "Plans by C. A. Lee"; and that defendant "supervised the construction of the building for the church." That in 1955 defendant was a member of this church; that title to the land upon which this educational building was constructed was held by five trustees, of whom he was one; and that he executed the mortgage to finance the construction of this educational building. The judge's findings of fact clearly show that defendant made

IN THE SUPREME COURT.

the "plans" for a building for Salem Baptist Church, and not for himself.

Plaintiff commenced this suit by the issuance of a summons on 27 October 1964. Defendant's answer was verified on 24 November 1964. The final hearing was held by Judge Copeland in December 1964. Conceding that in making these "plans" for the construction of this educational building for his church defendant violated the provisions of G.S. 83-12, plaintiff is guilty of unreasonable delay in applying for an injunction for this violation. Plaintiff has shown no legal ground for such delay. Considering all the facts and circumstances of defendant's preparing or assisting in preparing the plans for an educational building for his church in 1955, and plaintiff's waiting until 27 October 1964 to commence a suit to apply for an injunction for what defendant did in 1955, and that plaintiff has shown no other violation by defendant of the provisions of Chapter 83 of the General Statutes, it is our opinion that plaintiff's delay in seeking an injunction in respect to what defendant did in 1955 on this church building has been continued so long and under such circumstances as to make it inequitable for a court of equity to issue an injunction against defendant for this violation, that plaintiff is guilty of laches, and has forfeited any claim it may have to injunctive relief against defendant for making or assisting in making plans for this church building in 1955. As a general rule, equity protects the vigilant, and not those who sleep on their rights, and courts of equity discourage laches and unreasonable delay in the enforcement of rights. 43 C.J.S., Injunctions, § 171, (c), Laches; Pomeroy's Equity Jurisprudence, 5th Ed., Vol. II, § 419c, p. 175; 28 Am. Jur., Injunctions, § 59.

Judge Copeland's findings of fact do not support his legal conclusion that "since the defendant was a member of the church and a Trustee when he assisted in the preparation of plans for a church building he stood in the position of owner and had both a legal and an equitable interest in the building to be constructed." His judgment is modified by eliminating from it this conclusion of law.

Judge Copeland's conclusion of law in respect to the automobile sales and service building is modified by adding thereto these words: "and by him and his wife as tenants by the entirety."

Judge Copeland's conclusion of law that "under the evidence presented the Court concludes that the plaintiff has failed to establish that the defendant has violated any provisions of the statutes relating to the practice of architecture," is modified by adding thereto these words: "except in respect to his preparing or assisting in the preparation of the plans for the construction of an educational building for Salem Baptist Church in Winston-Salem, and that plaintiff by reason

BOARD OF ARCHITECTURE *v.* LEE.

of its laches has forfeited any claim it may have to injunctive relief for this violation."

Judge Copeland's findings of fact support his conclusions of law as modified in this opinion, and his findings of fact and conclusions of law as modified support his judgment. The judgment is regular upon its face.

Modified and affirmed.

HIGGINS, J., concurring: Judge Copeland, by finding of fact No. 3, determined that Mr. Lee, a member of the Salem Baptist Church and one of its five Trustees, drew the plans and specifications for the construction of a building on the church's property to be used in its church program. He made no charge for drawing the plans which complied with the building code and met all safety standards.

At the time (1955) Mr. Lee made the plans for the erection of the building on the church property, he held title as one of five trustees. The Architects' Licensing Act exempted him from the licensing requirement. "Nothing in this chapter shall be construed to prevent any *person* from making plans or data for buildings for himself." G.S. 83-12. By the 1957 amendment the word *person* was stricken and the word *individual* was substituted. Webster's Third International Dictionary, at p. 1686, defines "person": "(6) A human being, a body of persons, or a corporation, partnership or other legal entity that is recognized by law as the subject of rights and duties." *Commissioners v. Cooperative,* 246 Mass. 235, 140 N.E. 811. The word "person" as above defined was broad enough to include "the body of persons" (Salem Baptist Church) "recognized by law as the subject of rights and duties," to the end that one of the members could be designated by the body to prepare its building plans. The provision "for himself" includes "for herself" or, as in this case, "for itself," referring to the church. Black's Law Dictionary, 4th Ed., p. 1299.

The Architects' Licensing Act contains highly penal provisions. Drawing plans without an architect's license is made a misdemeanor for which punishment shall be by fine of not less than $100.00 nor more than $500.00, or imprisonment not exceeding three months, or both fine and imprisonment. Each day constitutes a separate offense. The Act, being penal, must be strictly construed in favor of the exemption, and against the implication of criminal intent and against the infliction of the penalty. *State v. Garrett,* 263 N.C. 773, 140 S.E. 2d 315; *Hinson v. Dawson,* 241 N.C. 714, 86 S.E. 2d 585; *State v. Scoggin,* 236 N.C. 1, 72 S.E. 2d 97; *Hilgreen v. Cleaners & Tailors, Inc.,* 225 N.C. 656, 36 S.E. 2d 252. The General Assembly evidently construed the word "person" as used in the original Act to mean something different from "in-

dividual." Otherwise, by making the substitution the lawmakers were merely spinning their wheels.

I am unwilling to join the majority in striking out conclusion of law No. 1. By doing so the Court in effect is holding that Mr. Lee was guilty of a misdemeanor and subject to punishment for each day he worked on the plans. If the Court's decision is correct, only the statute of limitations offers refuge from prosecution. I think Mr. Lee on this record has a better defense than the one the Court allows him — laches on the part of the plaintiff in bringing this action.

RODMAN, J., concurs in this opinion.